UNITED STATES COURT OF APPEALS
For the Fifth Circuit

_____

No. 95-40004

_____


VENTANA INVESTMENTS, A Texas General Partnership;
PRIDE HOUSE CARE CORPORATION; BRITWILL COMPANY;
BRUCE H. WHITEHEAD, individually

                              Plaintiffs-Appellants,
                     and

            ALL PLAINTIFFS

                              Plaintiff,


                     VERSUS


   909 CORPORATION, formerly known as Underwood Neuhaus;
     KEMPER FINANCIAL COMPANIES, INC.; LOVETT MITCHELL
WEBB & GARRISON, INC.; FRANKLIN FINANCIAL SERVICES, INC.;
                   WILLIAM SORENSON;

                              Defendants-Appellees,

            RESOLUTION TRUST CORPORATION,
         as Receiver for Franklin Federal
                Savings Association,

                              Intervenor-Defendant-Appellee.


_____

Appeal from the United States District Court
for the Eastern District of Texas
_____
September 13, 1995



Before POLITZ, Chief Judge, HILL,[1] and DeMOSS, Circuit Judges.

_____

[1]Circuit Judge of the Eleventh Circuit, sitting by
designation.

DeMOSS, Circuit Judge:

This is an appeal from a grant of summary judgment against plaintiff-appellant Ventana Investments,[2] and in favor of defendant-appellees Underwood Neuhaus ("Underwood"), Franklin Financial Services, Inc. ("Franklin Financial")[3] and intervenor-defendant-appellee the Resolution Trust Corporation ("RTC").

This case was originally filed in the 172nd Judicial District of Jefferson County, Texas, but was removed by the RTC to the United States District Court for the Eastern District of Texas. Ventana asserted that removal by the RTC was untimely and moved to remand the case back to Texas district court. That motion was denied. In addition to appealing the summary judgment, Ventana appeals the denial of the motion to remand. Finding that the RTC's removal was untimely, we VACATE the district court's decision and REMAND to the federal district court with instructions to remand to the 172nd Judicial District of Jefferson County, Texas.

FACTS

In 1989, Ventana agreed to purchase 85 nursing homes in Iowa and Arkansas from Beverly Enterprises. Ventana was to then resell the nursing homes to Mercy Health Initiatives and Pride House.[4]

---

[2]All of the appellants (Ventana Investments, Pride House Care Corporation, Britwill Company, and Bruce H. Whitehead) will be referred to collectively as "Ventana."

[3]There are three other defendants, Kemper Financial Companies, Inc., Lovett Mitchell Webb & Garrison, Inc. and William Sorenson. Discussion of these defendants is not important to our resolution of this case.

[4]The Iowa and Arkansas deals were separate. The Iowa nursing homes were sold to Mercy Health Initiatives, while the Arkansas

Each of the deals was to be financed with approximately $85,000,000 in tax-exempt bonds and Underwood agreed to render investment banking services to help Ventana finance the deal. The tax-exempt bonds were issued by the Iowa Finance Authority and the Arkansas Development Finance Authority ("ADFA"), respectively.

Ventana issued two notes to Underwood. The first, for $100,000, was due and payable at the close of the Iowa deal. The second, for $700,000, was due and payable in full on June 1, 1990, or at the close of the Arkansas deal, whichever came first.

The Iowa deal closed in August 1989. Shortly after the closing, Ventana became concerned about Underwood's ability to meet its financial obligations, because of changes in Underwood's management. Ventana asked to substitute Donaldson, Lufkin, and Jenrette ("DLJ") as the underwriter for the Arkansas deal. Underwood refused to allow the substitution.

On September 21, 1989, ADFA approved the Arkansas deal with Underwood as the underwriter. The deal still required the final approval of ADFA, as well as the approval of then Governor Bill Clinton. Underwood withdrew as underwriter on September 25, 1989, and within one day DLJ was hired as its replacement. Underwood's withdrawal required that the deal be resubmitted to ADFA, with DLJ listed as the new underwriter. Ventana alleges that the bonds would have issued soon after the September 21 approval had Underwood not withdrawn.

_____

nursing homes were to be sold to Pride House.

In early October 1989, the proposed Arkansas deal became a tumultuous political issue, with many individuals alleging it was an example of outsiders trying to exploit the people of Arkansas for their own gain. Eventually, Governor Clinton entered the fray and announced that he would not sign the proposal even if it was approved by ADFA. At that point the deal was dead and Ventana never gained ADFA approval.

Because the Arkansas deal did not close, the second note of $700,000 was due and payable by its terms on June 1, 1990. Ventana did not make the payment and instead filed suit.

PROCEDURAL HISTORY

Ventana sued Underwood in Texas district court on June 1, 1990, alleging, inter alia, (1) breach of contract; (2) breach of fiduciary duty; (3) estoppel; (4) violation of the Texas Deceptive Trade Practices Act ("DTPA"), TEX. BUS. & COM. CODE ANN. § 17.41 et seq.; (5) fraud and negligent misrepresentation; (6) tortious interference; and (7) mutual mistake and reformation.

On January 13, 1993, Ventana added Franklin Financial Services, Inc. ("Franklin Financial"), Underwood's parent company, as a defendant in the lawsuit. On the same day, the Texas district court entered a temporary restraining order ("TRO") prohibiting Underwood and Franklin Financial from transferring Underwood's assets.[5] On January 22, 1993, Underwood and Franklin Financial

---

[5]Franklin Financial is a wholly-owned subsidiary of Franklin Federal Savings Association (Franklin Savings), for which the Resolution Trust Corporation ("RTC") was the receiver and conservator. 909 Corp, formerly known as Underwood, Neuhaus & Company, was a wholly-owned subsidiary of Franklin Financial that

4

removed this case to the United States District Court for the Eastern District of Texas, asserting removal jurisdiction under 12 U.S.C. § 1441a(l)(3), because Franklin Savings was under the conservatorship and receivership of the RTC. After removal, the TRO expired by its own terms. In April 1993, the federal district court remanded to the Texas district court in a one sentence order, without explanation.

On September 3, 1993, Ventana obtained a second TRO restraining Underwood and Franklin Financial from transferring Underwood's assets. On October 1, 1993, the RTC intervened as of right in the Texas district court action and removed the case to the United States District Court for the Eastern District of Texas, pursuant to 12 U.S.C. 1441a(l)(3). On October 12, 1993, Ventana filed a motion to remand, which was denied on January 20, 1995.[6]

In January 1994, Underwood filed a motion for summary judgment and in April 1994 Ventana cross-moved for summary judgment. The federal district court granted summary judgment in favor of Underwood and denied Ventana's motion. Ventana filed a timely notice of appeal.

---

dissolved on July 31, 1992.

[6]The motion to remand was timely filed, as it was filed within 30 days of removal. 28 U.S.C. § 1447(c).

REMOVAL

The Financial Institutions Reform, Recovery, and Enforcement Act of 1989 ("FIRREA") provides that federal courts have original jurisdiction over any action to which the Resolution Trust Corporation ("RTC") is a party.[7] 12 U.S.C. § 1441a(l)(1). FIRREA allows the RTC to remove to federal court any state court action involving an institution of which the RTC is the conservator or receiver. 12 U.S.C. § 1441a(l)(3)(A). The RTC may remove the case within 90 days after it is substituted as a party. 12 U.S.C. § 1441a(l)(3)(A)(i). The RTC is substituted as a party "upon the filing of a copy of the order appointing the [RTC] as conservator or receiver for that party or the filing of such other pleading informing the court that the [RTC] has been appointed conservator or receiver for such party." 12 U.S.C. § 1441a(l)(3)(B).

When FIRREA was originally passed, it said, as it does today, that the removal clock begins to run when the RTC is substituted as a party. However, "substituted" was not defined in the statute, and a circuit split quickly arose regarding the meaning of that term. JAMES W. MOORE, 1A MOORE'S FEDERAL PRACTICE ¶ 0.167[13] (1995). Several circuits were of the opinion that the time period began

_____

[7]After Ventana appealed, they moved for dismissal of the case due to lack of subject matter jurisdiction, and a motions panel of this Court denied the motion. However, the dispositive issue in this appeal is not a lack of subject matter jurisdiction, but rather a procedural defect in removal. Barnes v. Westinghouse Elec. Corp., 962 F.2d 513, 516 (5th Cir.), cert. denied, 113 S. Ct. 600 (1992) (untimely removal is a procedural defect and does not go to subject matter jurisdiction). In any event, an oral argument panel is not bound by a motions panel's denial of a motion to dismiss. E.E.O.C. v. Neches Butane Products Co., 704 F.2d 144, 147 (5th Cir. 1983).

when the RTC was appointed as conservator or receiver. Other circuits, ours included, held that the time period did not begin until the RTC appeared in the state court matter.[8]

Because of this confusion, Congress amended FIRREA in December 1991. Effective February 1, 1992, a definition of "substituted" was added ("1992 Amendment"). The statute, as amended, which is still in effect, provides that the RTC is substituted as a party "upon the filing of a copy of the order appointing the [RTC] as conservator or receiver for that party or the filing of such other pleading informing the court that the [RTC] has been appointed conservator or receiver for such party." 12 U.S.C. § 1441a(l)(3)(B).[9]

Underwood removed the case to federal court on January 22, 1993. On January 26, 1993, Underwood filed, in Texas district court, a notice of filing notice of removal. Attached to the notice was the notice of removal, which included the Office of Thrift Supervision orders appointing the RTC as conservator and receiver of Franklin Savings. This was clearly "the filing of a copy of the order appointing the [RTC] as conservator or receiver"

---

[8]Our circuit has applied a parallel rule with regard to FDIC removal, holding that under 12 U.S.C. § 1819(b)(2)(B), which governs removal by the FDIC, the clock does not begin running until the FDIC appears in the state court proceeding. FDIC v. Loyd, 955 F.2d 316, 327 (5th Cir. 1992).

[9]Many of the cases cited by the RTC are pre-1992 Amendment or relate to the FDIC statute. Those cases are, therefore, inapposite. Given the change made by the 1992 Amendment and the current differences between the RTC and FDIC removal statutes, parties should be careful to cite the Court to appropriate controlling law.

7

for Franklin Savings, and, therefore, the RTC was substituted as a party in the case.[10] Thus, the removal clock began running on January 26, 1993.[11]

However, in April 1993, the federal district court remanded the case back to the state district court. The RTC chose not to appeal this decision, even though it had the right to do so. 12 U.S.C. § 1441a(l)(3)(C). Instead, the RTC chose to ignore the litigation until September 1993, when the Texas district court issued a second temporary restraining order. The RTC then intervened in the case and on October 1, 1993, removed the case to federal court.

Generally, when a case is remanded to state court, the removing party does not have a right to appeal. However, Congress has generously provided the RTC with the right to appeal remand orders. If the RTC thought the remand was incorrect, it had a remedy: appeal. What the RTC did not have the right to do was sit back, monitor the state court action, and then intervene and remove when it saw fit. Allowing this result would render meaningless § 1441a's timetable. Congress provided that even though the RTC is not formally a party, it will be deemed one by being "substituted." Substitution starts the running of the removal clock. Neither

---

[10]The RTC need not be the party who actually files the papers informing the court of the conservatorship or receivership. The statute only requires that they be filed with the state court. Spring Garden Assn. v. RTC, 26 F.2d 412, 417 (3d Cir. 1994).

[11]There is nothing in the record to indicate that the RTC lacked notice of this filing and the RTC does not claim a lack of notice.

logic nor the plain language of the statute leads to the conclusion that, after being substituted as a party, the RTC is free to remove at any time simply because the case has been remanded.

Because the removal clock began running on January 26, 1993 and the second removal of the case did not occur until October 1, 1993, over 90 days passed from the date the RTC was substituted as a party. Therefore, the second removal was not timely. Even assuming, arguendo, that the 90-day period was tolled while the case was in federal court the first time, over 90 days elapsed between the April 12 remand and the October 1 removal. Therefore, the district court erred in denying Ventana's motion for remand.

CONCLUSION

The RTC's removal of this case was not timely and, therefore, the federal district court erred in failing to remand to state court. Accordingly, the district court's judgment is VACATED and the case is REMANDED to the federal district court with instructions to remand to the 172nd Judicial District of Jefferson County, Texas.