In Re: GRAND JURY SUBPOENA.

Nos. 98–40870, 99–40262 and 99–40271.

United States Court of Appeals,
Fifth Circuit.

Sept. 20, 1999.

Jared Aram Goldstein, U.S. Department of Justice, Criselda Ortiz, U.S. Department of Justice, Environmental Crime Section, Washington, DC, for Plaintiffs–Appellees.

David Sydney Krakoff, Robert Seth Brager, Beveridge & Diamond, Washington, DC, for Sealed Appellant #1 and Sealed Appellant #3.

David Benjamin Gerger, Foreman, De-Geurin, Nugent & Gerger, Houston, TX, Richard L. Beizer, Reed Michael Brodsky, Crowell & Moring, Washington, DC, Phillip A. McKinney, Hornblower, Manning & Ward, Corpus Christi, TX, for Sealed Appellant #1 and Sealed Appellant #2.

Before KING, Chief Judge, and SMITH and BARKSDALE, Circuit Judges.

KING, Chief Judge:

In these consolidated appeals, Appellants, targets of an ongoing grand jury investigation, challenge three district court orders: two denying Appellants' motions to return documents turned over to Appellee in the process of complying with a grand jury subpoena (Nos. 98–40870 and 99–40271) and one granting Appellee's motion to compel production of certain documents under the subpoena (No. 99–40262). We dismiss all three appeals for want of jurisdiction and, as to No. 99–40262, grant mandamus.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Corporate Appellants[1] operate plants in south Texas and are subject to compliance with and reporting under federal regulations that set standards with regard to the emission of certain pollutants (the "Regu-

---

1. Corporate Appellants are related corporations designated as Sealed Appellants 2 and 3 in No. 98–40870 and as Sealed Appellants 1 and 2 in Nos. 99–40262 and 99–40271. They will be referred to as Corporate Appellants throughout this opinion.

lations").[2] Individual Appellant ("Individual Appellant" or, with Corporate Appellants, "Appellants")[3] is an attorney and an employee of Corporate Appellants. In June 1996, a federal grand jury issued a subpoena duces tecum to Corporate Appellants requiring the production of all documents from January 1, 1990, onward relating to Corporate Appellants' compliance with and reporting under the Regulations. Corporate Appellants notified certain employees, including Individual Appellant, of the subpoena and requested that each employee forward to a custodian of records documents that the employee deemed responsive to the subpoena.

### A. No. 98–40870

Individual Appellant forwarded to the custodian a number of files containing documents he deemed responsive. One of the forwarded files was marked, "NOTE: ALL DOC[UMENT]S SHOULD BE CONSIDERED ATTORNEY–CLIENT, WORK–PRODUCT PRIVILEGED." This file contained, among other things, a two-page document (the "Document") bearing the header, "ATTORNEY–CLIENT PRIVILEGE/WORK PRODUCT IMMUNITY; PLEASE KEEP CONFIDENTIAL AND LIMIT DISTRIBUTION."

Prior to producing any documents under the subpoena, Corporate Appellants claim to have "implemented measures reasonably calculated to locate responsive documents and remove privileged ones from production." Brief for Corporate Appellants at 9 (No. 98–40870). In October 1996, Corporate Appellants produced approximately 5,000 documents in response to the subpoena, including the Document.

In May 1998, during a conversation with a Department of Justice attorney for the United States ("Appellee" or the "Government"), outside counsel for Corporate Appellants learned that the Document had been turned over more than a year-and-a-half earlier. Corporate Appellants quickly requested, in writing, return of the Document under a claim of privilege. The Government responded that the Document did not appear to be privileged, and that if privileged, the privilege was waived by intentional disclosure and by the crime-fraud exception to the attorney-client privilege.

Later that same month, Corporate Appellants filed a motion in the district court to compel return of the Document. Individual Appellant intervened and filed his own motion to compel return of the Document under a claim of work product immunity.

In July 1998, the district court issued an order denying both motions. The court found that any attorney-client privilege that may have existed was waived by Corporate Appellants' intentional production of the Document and that the Document was not prepared in anticipation of litigation and contained "only a summary of events and g[ave] no indication of [Individual Appellant's] mental impressions, opinions, conclusions, judgments or legal theories" and, therefore, was not immune from disclosure as attorney work product.[4] Corporate Appellants and Individual Appellant timely appealed the district court's order. This appeal is the subject of No. 98–40870.

### B. No. 99–40262

In its response to Corporate Appellants' May 1998 motion to compel return of the

---

2.  Appellants are the targets of an ongoing grand jury investigation, and the record has been sealed. Therefore, certain facts will be abbreviated in order to maintain the anonymity of the parties and the confidentiality of the ongoing grand jury investigation.

3.  Individual Appellant is designated as Sealed Appellant 1 in No. 98–40870 and as Sealed

Appellant 3 in Nos. 99–40262 and 99–40271. He will be referred to as Individual Appellant throughout this opinion.

4.  The court never reached the issues of attorney-client privilege or the crime-fraud exception to attorney-client privilege and work product immunity.

Document, the Government moved the district court to compel Corporate Appellants to produce, for in camera inspection, all evidence being withheld under a claim of privilege to determine the extent to which the crime-fraud exception defeated the claimed privilege. On July 31, 1998, the district court granted the Government's motion. Individual Appellant has asserted that many of the documents submitted for in camera review were also protected by work product immunity.

After reviewing the documents submitted for in camera inspection, the district court, in an order entered on February 18, 1999, found that the documents were protected by the attorney-client privilege and assumed that they were protected by the work product doctrine. The court, however, further found that the crime-fraud exception defeated any privilege or immunity. In the alternative, the court found that Corporate Appellants waived their attorney-client privilege with regard to the documents by injecting the reasonableness of their reliance on the documents into the litigation. The court granted the Government's motion to compel production of over 200 documents and stated, "In ten days of issuance of this Order, the Court will make said documents available to the Government and will return the remaining in camera documents to [Corporate Appellants]." Both Corporate Appellants and Individual Appellant timely appealed this order in No. 99–40262.

### C. No. 99–40271

On September 1, 1998, Corporate Appellants had filed a motion, which was later granted, for the return of certain documents submitted for in camera review that were non-responsive to the original grand jury subpoena. Following their points and authorities in support of this motion, Corporate Appellants inadvertently attached a memorandum (the "Memorandum") that they claim is protected by attorney-client privilege. Individual Appellant claims the Memorandum is his protected work product. Corporate Appellants and Individual Appellant each moved to compel return of the Memorandum.

In an order entered on February 22, 1999, denying Corporate Appellants' and Individual Appellant's motions to compel return of the Memorandum, the district court found that the Memorandum was the work product of the in-house attorney by whom it was prepared and that it was protected by attorney-client privilege in the hands of Corporate Appellants. However, the court found that the attorney-client privilege and work product immunity were waived by the inadvertent disclosure of the Memorandum. The court further found that the Memorandum was not the work product of Individual Appellant and that if it were, it nonetheless fell under the crime-fraud exception to work product immunity. Both Corporate Appellants and Individual Appellant timely appealed this order in No. 99–40271. On April 1, 1999, the three appeals were consolidated and ordered expedited.

## II. BACKGROUND

The first, and conclusive, issue before us in these appeals is that of jurisdiction: Are the pre-indictment discovery orders[5] of the district court appealable?[6] We begin our

---

5. The orders at issue in these appeals are all pre-indictment discovery orders. Each order is the equivalent of an order denying a motion to quash the grand jury subpoena as it relates to the document or documents at issue. *See In re Grand Jury Proceedings Involving Berkley and Co.*, 629 F.2d 548, 551 (8th Cir.1980) ("The district court's order rejecting Berkley's claim of privilege and ordering disclosure of documents to the grand jury is the functional equivalent of an order denying a motion to quash a grand jury subpoena.").

6. On February 10, 1999, a motions panel of this court denied the Government's motion to dismiss No. 98–40870 for lack of jurisdiction. In this circuit, an oral argument panel is not bound by a motions panel's denial of a motion to dismiss. *See Ventana Invs. v. 909 Corp.*, 65 F.3d 422, 425 n. 7 (5th Cir.1995) (citing *EEOC v. Neches Butane Prods. Co.*, 704 F.2d

discussion of this issue with first principles.

## A. Finality

■ Except in certain circumstances not applicable here, this court's jurisdiction is limited to "final decisions" of the district court. 28 U.S.C. § 1291 (1994).[7] Recently, the Supreme Court explained the finality requirement:

> Section 1291 of the Judicial Code generally vests courts of appeals with jurisdiction over appeals from "final decisions" of the district courts. It descends from the Judiciary Act of 1789 where "the First Congress established the principle that only 'final judgments and decrees' of the federal district courts may be reviewed on appeal." In accord with this historical understanding, we have repeatedly interpreted § 1291 to mean that an appeal ordinarily will not lie until after final judgment has been entered in a case.... Consistent with these purposes, we have held that a decision is not final, ordinarily, unless it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' "

*Cunningham v. Hamilton County*, —— U.S. ——, —— – ——, 119 S.Ct. 1915, 1919–20, 144 L.Ed.2d 184 (1999) (internal citations omitted) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798, 109 S.Ct. 1494, 103 L.Ed.2d 879 (1989); *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521, 108 S.Ct. 1945, 100 L.Ed.2d 517 (1988)).

■ Pre-trial discovery orders are generally no exception to the finality requirement. Courts have "denied [immediate] review of ... [such orders because,] in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling." *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 377, 101 S.Ct. 669, 66 L.Ed.2d 571 (1981).

Three arguments are often advanced to justify the finality requirement. First, "[i]t helps preserve the respect due trial judges ...." *Flanagan v. United States*, 465 U.S. 259, 263, 104 S.Ct. 1051, 79 L.Ed.2d 288 (1984). "Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system." *Firestone*, 449 U.S. at 374, 101 S.Ct. 669. Second, the requirement minimizes a party's opportunities to defeat the valid claims of his opponents through an endless barrage of appeals. As Justice Frankfurter explained nearly 60 years ago, "[the finality requirement] avoid[s] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from the various rulings to which a litigation may give rise, from its initiation to entry of judgment." *Cobbledick v. United States*, 309 U.S. 323, 325, 60 S.Ct. 540, 84 L.Ed. 783 (1940). Finally, the rule promotes efficiency by removing obstacles that work to impede judicial process. "To be effective, judicial administration must not be leaden-footed. Its momentum would be arrested by permitting separate reviews of the component elements in a unified cause." *Id.*

144, 147 (5th Cir.1983) ("A denial by a motions panel of a motion to dismiss for want of jurisdiction, however, is only provisional. With the benefit of full briefing and (as was the case here) oral argument, the panel to which the case falls for disposition on the merits may conclude that the motions decision was improvident and should be reconsidered.")). Therefore, the motions panel's denial of the Government's motion to dismiss No. 98–40870 is subject to reconsideration by this panel.

7. Section 1291 provides, in part, "The courts of appeals ... shall have jurisdiction of appeals from all final decisions of the district courts of the United States, ... except where a direct review may be had in the Supreme Court."

In our legal system, "the right to a judgment from more than one court is a matter of grace and not a necessary ingredient of justice." *Id.* Therefore, requiring an individual to await final judgment before advancing an appeal does not, in and of itself, deny justice; in determining what justice requires, courts must balance the costs the individual must bear in awaiting final judgment against the societal and institutional hardships caused by allowing an immediate appeal. These hardships are significant, and hence the finality requirement is particularly important, in the area of criminal law. *See United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 265, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) ("This Court has long held that [the doctrine of finality] is inimical to piecemeal appellate review of trial court decisions which do not terminate the litigation, and that this policy is at its strongest in the field of criminal law...."); *DiBella v. United States*, 369 U.S. 121, 126, 82 S.Ct. 654, 7 L.Ed.2d 614 (1962) ("[T]he delays and disruptions attendant upon intermediate appeal are especially inimical to the effective and fair administration of the criminal law."); *Cobbledick*, 309 U.S. at 325, 60 S.Ct. 540 ("These considerations of policy are especially compelling in the administration of criminal justice."). The particular importance of the finality requirement in administering the criminal law is derived from both the accused's Sixth Amendment right to, and society's independent interest in, a speedy trial:

> As time passes, the prosecution's ability to meet its burden of proof may greatly diminish: evidence and witnesses may disappear, and testimony becomes more easily impeachable as the events recounted become more remote. Delay increases the cost of pretrial detention and extends "the period during which defendants released on bail may commit other crimes." Delay between arrest and punishment prolongs public anxiety over community safety if a person accused of a serious crime is free on bail. It may also adversely affect the prospects for rehabilitation. Finally, when a crime is committed against a community, the community has a strong collective psychological and moral interest in swiftly bringing the person responsible to justice. Prompt acquittal of a person wrongly accused, which forces prosecutorial investigation to continue, is as important as prompt conviction and sentence of a person rightly accused. Crime inflicts a wound on the community, and that wound may not begin to heal until criminal proceedings have come to an end.

*Flanagan*, 465 U.S. at 264–65, 104 S.Ct. 1051 (internal citation omitted) (quoting *United States v. MacDonald*, 435 U.S. 850, 862, 98 S.Ct. 1547, 56 L.Ed.2d 18 (1978)).

The need to limit delay is no less compelling in the pre-indictment context of a grand jury proceeding than it is in the criminal trial that may follow. "Opportunity for obstructing the 'orderly progress' of investigation should no more be encouraged in one case than in the other. That a grand jury proceeding has no defined litigants and that none may emerge from it, is irrelevant to the issue." *Cobbledick*, 309 U.S. at 327–28, 60 S.Ct. 540 (quoting *Segurola v. United States*, 275 U.S. 106, 112, 48 S.Ct. 77, 72 L.Ed. 186 (1927)). Whether pre- or post-indictment, neither convenience nor expediency alone can ever justify immediate appeal without a final judgment in the underlying proceeding. Indeed, "[b]earing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship." *Id.* at 325, 60 S.Ct. 540.

Despite the weighty considerations favoring denial of appeals before a final judgment is rendered in the district court, however, there exist rare instances in which pre-final judgment review is allowed. Two doctrines used to determine the appropriateness of immediate appeal in certain classes of cases warrant discussion

here: the collateral order doctrine and the *Cobbledick* doctrine.

### B.  The Collateral Order Doctrine

■ The collateral order doctrine descends from the case of *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949).  Claiming diversity jurisdiction, Cohen filed a derivative action in federal district court against Beneficial and certain of its managers and directors for mismanagement and fraud.  While the action was pending, New Jersey, the forum state, passed a law making plaintiffs with limited corporate holdings liable for expenses in unsuccessful derivative actions.  The law allowed the corporation to require a security, and it applied to pending cases.  Beneficial moved to require security, and the district court, being of the opinion that the new law was inapplicable to cases pending in federal court, denied the motion.  Beneficial appealed, and the Supreme Court found jurisdiction because the case fell "in that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated."  *Id.* at 546, 69 S.Ct. 1221.

Recent Supreme Court cases invoking the collateral order doctrine have clarified the rule as providing "that certain orders may be appealed, notwithstanding the absence of final judgment, but only when they 'are conclusive, . . . resolve important questions separate from the merits, and . . . are effectively unreviewable on appeal from the final judgment in the underlying action.' "  *Cunningham*, —— U.S. at ——, 119 S.Ct. at 1919 (alterations in original)(quoting *Swint v. Chambers County Comm'n*, 514 U.S. 35, 42, 115 S.Ct. 1203, 131 L.Ed.2d 60 (1995)).

The collateral order doctrine is rarely applied in criminal cases:

We have interpreted the collateral order exception "with the utmost strictness" in criminal cases.  Although we have had numerous opportunities in the 40 years since *Cohen* to consider the appealability of prejudgment orders in criminal cases, we have found denials of only three types of motions to be immediately appealable: motions to reduce bail, motions to dismiss on double jeopardy grounds, and motions to dismiss under the Speech or Debate Clause.

*Midland Asphalt*, 489 U.S. at 799, 109 S.Ct. 1494 (internal citations omitted) (quoting *Flanagan*, 465 U.S. at 265, 104 S.Ct. 1051).  Denial of a motion to reduce bail becomes truly moot if the accused must wait until the conclusion of trial to appeal the order.  The right guaranteed by the Speech and Debate and Double Jeopardy Clauses is, at its most basic level, the right not to have to stand trial.  *See Flanagan*, 465 U.S. at 266, 104 S.Ct. 1051 (declining to extend the collateral order doctrine to an order disqualifying counsel in a criminal case).

### C.  The Cobbledick Doctrine and the Perlman Exception

In *Cobbledick v. United States*, 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940), the appellant was subpoenaed to appear and produce certain documents before a grand jury.  He moved the district court to quash the subpoena, but the motion was denied, and Cobbledick appealed.  The Supreme Court held that the order lacked the finality requisite for an appeal, and the appellant could secure a right of immediate appeal only by defying the order, being held in contempt, and appealing the contempt order.  "Whatever right he may have requires no further protection . . . than that afforded by the district court until the witness chooses to disobey and is committed for contempt.  At that point the witness' situation becomes so severed from the main proceeding as to permit an appeal."  *Cobbledick*, 309 U.S. at 328, 60

S.Ct. 540 (internal citation omitted).[8] The rule established in *Cobbledick* has long been followed in this circuit. *See, e.g., United States v. Grand Jury,* 425 F.2d 327 (5th Cir.1970).

There is, however, an exception to the strict requirements of the *Cobbledick* doctrine. In *Perlman v. United States,* 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), appellant Perlman brought suit against Standard Welding for patent infringement and won. During the trial, Perlman had offered certain exhibits into evidence. Later, Perlman's company brought an infringement suit against Firestone, which was eventually dismissed without prejudice under the condition that certain evidence, including the exhibits used in the first suit against Standard Welding, be impounded in the custody of the clerk of the court and kept under seal. The government attempted to gain possession of the exhibits in furtherance of a grand jury investigation of Perlman, and Perlman attempted to restrain the government's use of the exhibits. He was unsuccessful in the district court, so he appealed to the Supreme Court. The government moved to dismiss the appeal for lack of jurisdiction on the grounds that the order of the district court was not final. The Supreme Court disagreed:

> The second contention of the Government is somewhat strange, that is, that the order granted upon its solicitation was not final as to Perlman but interlocutory in a proceeding not yet brought and depending upon it to be brought. In other words, that Perlman was powerless to avert the mischief of the order but must accept its incidence and seek a remedy at some other time and in some other way. We are unable to concur.

*Id.* at 12–13, 38 S.Ct. 417. As the Court explained in *Cobbledick,* "Perlman's exhibits were already in the court's possession. If their production before the grand jury violated Perlman's constitutional right then he could protect that right only by a separate proceeding to prohibit the forbidden use." 309 U.S. at 328, 60 S.Ct. 540.

The *Perlman* exception has come to stand for the proposition that a party opposing a discovery order need not stand in contempt "where the documents at issue are in the hands of a third party who has no independent interest in preserving their confidentiality." *Pennsylvania v. Ritchie,* 480 U.S. 39, 77 n. 3, 107 S.Ct. 989, 94 L.Ed.2d 40 (1987) (Stevens, J., dissenting); *see also Church of Scientology v. United States,* 506 U.S. 9, 18 n. 11, 113 S.Ct. 447, 121 L.Ed.2d 313 (1992) ("However, under the so-called *Perlman* doctrine, a discovery order directed at a disinterested third party is treated as an immediately appealable final order because the third party

---

8. The fact that the *Cobbledick* doctrine entails raising the validity of the underlying order in an appeal of a contempt citation suggests that the collateral order doctrine is an inappropriate alternative in situations where the *Cobbledick* doctrine applies. If the collateral order doctrine were an appropriate alternative, the original order would itself be appealable, and waiting to challenge it in an appeal of a contempt citation would be disallowed, thereby nullifying the *Cobbledick* doctrine. *See United States v. Ryan,* 402 U.S. 530, 532 n. 4, 91 S.Ct. 1580, 29 L.Ed.2d 85 ("*Walker v. Birmingham* ... is not to the contrary. Our holding that the claims there sought to be asserted were not open on review of petitioners' contempt convictions was based upon the availability of review of those claims at an earlier stage."); *see also United States v. Pearce,* 792 F.2d 397 (3d Cir.1986). In that

case, Pearce refused to testify before a grand jury because he felt his plea agreement excused his testimony, and criminal contempt proceedings were commenced against him. At his contempt trial, the district court refused to allow him to raise the invalidity of the underlying order to compel testimony as a defense. The Court of Appeals for the Third Circuit held that the defense could be raised:

> The rule is that when an order is appealable, and one foregoes the appeal, he may not raise the validity of the order at a subsequent contempt trial; however, if the order is not appealable, and compliance with it will bring irreparable harm, the individual has the option of disobeying the order and raising its invalidity as a defense in subsequent contempt proceedings.

*Id.* at 400.

presumably lacks a sufficient stake in the proceedings to risk contempt by refusing compliance." (internal citation omitted)); *United States v. Ryan,* 402 U.S. 530, 533, 91 S.Ct. 1580, 29 L.Ed.2d 85 (1971) ("To have denied review would have left Perlman 'powerless to avert the mischief of the order,' for the custodian could hardly have been expected to risk a citation for contempt in order to secure Perlman an opportunity for judicial review." (quoting *Perlman,* 247 U.S. at 13, 38 S.Ct. 417)). It is well-established in this circuit that the subpoenaed third party's lack of interest in protecting the confidentiality of the subpoenaed documents is the touchstone of the *Perlman* inquiry. *See, e.g., In re Grand Jury Proceedings in the Matter of Fine,* 641 F.2d 199, 201 (5th Cir.1981) ("[The reasoning supporting the *Cobbledick* doctrine] does not hold as firmly when the subpoenaed party is one who has no direct and personal interest in the suppression of the information desired by the grand jury.").[9]

In *Fine,* we adopted the rule that a client-intervenor who claims her own interest or privilege may appeal an order compelling her innocent attorney to testify before a grand jury, even though the attorney has not refused compliance and been held in contempt. *See id.* at 203.[10] We were quick to explain in that opinion that "[o]ur reasoning applie[d] only to the normal attorney-client relationship, and would not extend to situations where the client will not lose meaningful appeal of

the issue or where the client exercises more direct control and responsibility for the actions of the attorney." *Id.* at 203 n. 3.

Against this doctrinal backdrop, we proceed to a determination of our jurisdiction to entertain the appeals before us.

### III. JURISDICTION IN THE INSTANT APPEALS

*A. The Cohen Collateral Order Doctrine*

■ Appellants assert that jurisdiction lies in the instant appeals by application of the collateral order doctrine. The Government contests that assertion. The parties' dispute centers on the exact test applied in this circuit to determine whether a district court order is directly appealable under the collateral order doctrine and whether or not the appeals at hand satisfy that test. We need not address this debate, however, because we find the doctrine inapplicable here.

■ First, the collateral order doctrine requires, in part, that the appealed issue be separate from the "merits of the action." *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 468, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978) (citing *Abney v. United States,* 431 U.S. 651, 658, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *MacDonald,* 435 U.S. at 855, 98 S.Ct. 1547). In all three cases where the Supreme Court has found the collateral order doctrine applicable in the criminal context, the appeal was filed post-

9. The Court of Appeals for the Eleventh Circuit has remarked, "And the subpoenaed party, unless he has either a particularly close relationship to the putative privilege-holder or a personal interest in nondisclosure of the material, is unlikely to risk a contempt citation simply to vindicate the rights of a third party." *In re Grand Jury Proceedings,* 832 F.2d 554, 558 (11th Cir.1987). Similarly, the Court of Appeals for the Second Circuit has stated, "There is an exception to [the *Cobbledick* doctrine], however[,] 'where the subpoena is directed against a third party [who is unlikely to risk being held in contempt to vindicate someone else's rights]....'" *In re Grand Jury Subpoena Duces Tecum Dated May 29, 1987,* 834 F.2d 1128, 1130 (2d Cir.1987)

(second alteration in original) (quoting *In re Katz,* 623 F.2d 122, 124 (2d Cir.1980)).

10. Most other circuits have adopted a similar rule. *See In re Grand Jury Subpoenas,* 123 F.3d 695 (1st Cir.1997) (also collecting cases); *In re Grand Jury Subpoena,* 784 F.2d 857 (8th Cir.1986); *Matter of Klein,* 776 F.2d 628 (7th Cir.1985); *United States v. (Under Seal),* 748 F.2d 871 (4th Cir.1984); *In re Grand Jury Proceedings,* 722 F.2d 303 (6th Cir.1983); *In re Grand Jury Proceedings,* 689 F.2d 1351 (11th Cir.1982); *In re Katz,* 623 F.2d 122 (2d Cir.1980); *In re Grand Jury Proceedings,* 604 F.2d 798 (3d Cir.1979).

indictment. Pre-indictment, it is conceptually difficult to identify any "action" from the merits of which the appeal is separate, and it is, therefore, at least in the ordinary case, equally difficult to find that this prong of the collateral order doctrine has been satisfied. Even if the grand jury proceeding is identified as the "action" at issue, it occurs in secret, leaving this court with no record to use in determining whether or not the contested order is collateral to the proceeding. Satisfying this prong of the collateral order doctrine is particularly problematic in these appeals because the district court found the crime-fraud exception overrode Appellants' claims of privilege and immunity, and Appellants challenge that finding by arguing that their actions did not constitute a crime. Reaching their contention might well place us at the very heart of the grand jury's investigation, at least insofar as we can tell.

Second, it is inappropriate to apply the collateral order doctrine to these appeals because, at least in cases contesting pre-indictment discovery orders, jurisdiction is more appropriately determined by application of the *Cobbledick* doctrine. As the Supreme Court has stated:

> [W]e have permitted appeals prior to criminal trials [under the collateral order doctrine] when a defendant has claimed that he is about to be subjected to forbidden double jeopardy, or a violation of his constitutional right to bail, because those situations, like the posting of security for costs involved in *Cohen,* "each involved an asserted right the legal and practical value of which could [sic] be destroyed if it were not vindicated before trial." By way of contrast, we have generally denied review of pretrial

discovery orders. Our rationale has been that in the rare case when appeal after final judgment will not cure an erroneous discovery order, a party may defy the order, permit a contempt citation to be entered against him, and challenge the order on direct appeal of the contempt ruling.

*Firestone,* 449 U.S. at 376–77, 101 S.Ct. 669 (internal citations omitted) (quoting *MacDonald,* 435 U.S. at 860, 98 S.Ct. 1547); *see also United States v. Amlani,* 169 F.3d 1189, 1192 n. 2 (9th Cir.1999) ("We note, however, that 'courts have refused interlocutory review of . . . [discovery] orders under the collateral order doctrine.' ") (alterations in original) (quoting *Admiral Ins. Co. v. United States Dist. Court,* 881 F.2d 1486, 1490 (9th Cir. 1989)).[11]

In sum, we conclude that the attorney-client privilege and work product immunity claims raised here do not justify invocation of the collateral order doctrine in the pre-indictment context, and we decline, in these appeals, to extend the collateral order doctrine beyond the strict bounds established by the Supreme Court.

### B. Individual Appellant

■ Individual Appellant claims that the documents at issue in Nos. 98–40870 and 99–40271, together with at least some of the documents at issue in No. 99–40262, are his protected work product. Basically, he asserts that regardless of our jurisdiction to entertain the appeals of Corporate Appellants, we have jurisdiction to entertain his appeals because he never handed the documents over to the Government or the court, he does not have the documents

---

**11.** Appellants cite *In re Grand Jury Proceedings,* 43 F.3d 966 (5th Cir.1994), for the proposition that jurisdiction properly lies, through application of the collateral order doctrine, in an appeal of a discovery order issued in the context of a grand jury proceeding. In that case, as discussed more fully *infra,* this court applied a unique blend of the *Perlman* exception and the collateral order doctrine after

determining that the turnover of certain documents would cause the attorney-appellants "irretrievably [to] lose any protectable interest they ha[d] in such documents." *Id.* at 970. That determination was based upon the "unique dilemma presented by [the] case," *id.,* and we decline to expand it into the general proposition Appellants here seek.

in hand, and he, therefore, cannot stand in contempt. He maintains that denying jurisdiction over his appeals would leave him "powerless to avert the mischief of the order[s]." *Perlman*, 247 U.S. at 13, 38 S.Ct. 417. Individual Appellant seems to reason that if, under *Fine*, a client-intervenor has an automatic route to appeal an order compelling production by her attorney, an attorney-employee should have an automatic route to appeal an order compelling production by his client-employer.

Individual Appellant misses the point of the *Perlman* exception and our case law. In *Fine*, we explained, "The *Perlman* exception was carved out when the general rule was found inapplicable because the subpoenaed party *could not be expected* to risk a contempt citation in order to protect the interests of a powerless third party." 641 F.2d at 202 (emphasis added). We recognized that "a variety of other results and remedies are available in cases outside of the standard attorney-client relationship, and we [declined to] decide issues of appealability in those more unique cases." *Id.* at 203 n. 3.

Appellants are all targets of the grand jury investigation. Because of this, Corporate Appellants, like Individual Appellant, have a stake in keeping the documents at issue here from production. Corporate Appellants can hardly be described as having "no independent interest in preserving [the documents'] confidentiality," *Ritchie*, 480 U.S. at 77 n. 3, 107 S.Ct. 989, because they simply are not "disinterested third part[ies]," *Church of Scientology*, 506 U.S. at 18 n. 11, 113 S.Ct. 447. To find jurisdiction over Individual Appellant's claims would set a standard allowing direct, immediate appeal of a contested discovery order any time any non-subpoenaed party could claim any stake in the resolution of the contested order. Neither *Perlman* nor its interpretation in *Fine* was intended as a backdoor around the *Cobbledick* doctrine.

Individual Appellant has failed to demonstrate to this court that his situation warrants application of the *Perlman* exception. At this stage, Individual Appellant's interests can only be vindicated, if at all, in an appeal by Corporate Appellants over which we have jurisdiction.

## C. Corporate Appellants

### 1. Nos. 98–40870 and 99–40271

■ In both of these appeals, Corporate Appellants assert that a particular document was inadvertently turned over to the Government. The Government does not contest the inadvertence of the disclosure of the Memorandum in No. 99–40271. However, in No. 98–40870 the Government contends, and the district court found, that the Document was intentionally produced.

Corporate Appellants rely heavily on the opinion of the Court of Appeals for the D.C. Circuit in *In re Grand Jury Investigation of Ocean Transport.*, 604 F.2d 672 (D.C.Cir.1979), for the proposition that once a document has been inadvertently disclosed, the opportunity to stand in contempt is lost, and immediate appeal is allowed under the *Perlman* exception. In *Ocean Transport.*, certain documents belonging to Sea–Land were subpoenaed. Sea–Land's original counsel was instructed to withhold from production those documents he deemed covered by attorney-client privilege. He marked certain documents with a "P" and turned the remaining documents over to the government. He also turned over certain documents marked with a "P." Six months later, Sea–Land's original counsel realized his error and notified the government that a formal demand for return of the documents marked with a "P" was forthcoming. A formal demand was finally made by Sea–Land's new counsel a year-and-a-half after the original disclosure. The D.C. Circuit determined that "the rationale of *Perlman v. United States*, ... not of the *Cobbledick* case, applie[d]," *id.* at 673, and that the collateral order doctrine applied to the case as well. It accepted jurisdiction over

the appeal pursuant to 28 U.S.C. § 1291 (1994). *See id.*

In relying so heavily on *Ocean Transport.*, Corporate Appellants miss some important differences between that case and their own. First, in *Ocean Transport.*, the attorney produced documents contrary to the express instructions of the subpoenaed client. Second, in that case there was no "delay or obstruction of the grand jury proceedings threatened by the ... appeal." 604 F.2d at 674.

When counsel has produced documents in direct contradiction to the express wishes of his client, some of the interests underlying the *Perlman* exception may weigh in favor of allowing immediate appeal. However, these interests alone are not strong enough to overcome the principles favoring finality. But when these interests are coupled with the fact that an immediate appeal will not impede the progress of the grand jury, as was the case in *Ocean Transport.*, the scales may tip, and an immediate appeal may be allowed. Appellants correctly point out that the document production at issue in the instant two appeals, particularly the uncontested inadvertent turnover in No. 99–40271, has some flavor of the production at issue in *Ocean Transport.* Here, however, the appeals are impeding the grand jury proceedings. Admittedly, the inadvertence alleged in these appeals does give some weight to finding jurisdiction under the *Perlman* exception, but, at least under the facts presented here, not enough to overcome the principles favoring final judgment. Whether we would reach the same decision as the D.C. Circuit reached in *Ocean Transport.* on the facts presented in that case must await another day.

Holding that the *Perlman* exception establishes jurisdiction over all cases of inadvertent disclosure would place this court in the precarious position presented in No. 98–40870, where the district court has found that a disclosure was intentional, and Corporate Appellants challenge that finding. In determining the threshold question of jurisdiction, this court would be forced to reach the merits of the appeal and decide whether the turnover was intentional or inadvertent. We decline Corporate Appellants' invitation to start down that road.

In *Gillespie v. United States Steel Corp.*, 379 U.S. 148, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), the Supreme Court remarked that "in deciding the question of finality the most important competing considerations are 'the inconvenience and costs of piecemeal review on the one hand and the danger of denying justice by delay on the other.'" *Id.* at 152–53, 85 S.Ct. 308 (quoting *Dickinson v. Petroleum Conversion Corp.*, 338 U.S. 507, 511, 70 S.Ct. 322, 94 L.Ed. 299 (1950)). If "[b]earing the discomfiture and cost of a prosecution for crime even by an innocent person is one of the painful obligations of citizenship," *Cobbledick*, 309 U.S. at 325, 60 S.Ct. 540, then certainly Corporate Appellants, as a cost of their own alleged or undisputed inadvertence, can be expected to await final judgment for a determination of their claims of privilege. This is not a case where a disinterested third party controlled the fate of the documents disclosed, *see Perlman*, 247 U.S. at 10, 38 S.Ct. 417; nor is it a case where the documents were stolen or seized, *see In re Grand Jury Proceedings Involving Berkley and Co.*, 629 F.2d 548, 550 (8th Cir.1980). Finally, it is not a case where allowing immediate appeal will not impede or delay the grand jury. *See Ocean Transport.*, 604 F.2d at 674. Corporate Appellants themselves controlled the fate of the documents at issue, and the criminal justice system should not be made to bear the brunt of their inadequate precautions.

Accordingly, the Government's motions to dismiss Nos. 98–40870 and 99–40271 for lack of jurisdiction are granted.

### 2. No. 99–40262

In this appeal, the district court ordered Corporate Appellants to hand over certain

documents for in camera inspection to determine the extent to which they were subject to production under the crime-fraud exception. *See United States v. Zolin,* 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989) (setting forth procedure for in camera inspection in cases where the crime-fraud exception may apply). In their briefs, Corporate Appellants suggest that, under the *Perlman* exception, an immediate appeal lies in every case where a judge determines documents must be produced after an in camera inspection. We cannot agree. So holding would lead to the troubling result that a judge's decision to conduct in camera review will create a right of immediate appeal from the subsequent turnover order. The rule thus established would threaten to swallow the *Cobbledick* doctrine, increase the number of immediate appeals, and undermine the policies favoring finality. "[E]ncouragement of delay is fatal to the vindication of the criminal law." *Cobbledick,* 309 U.S. at 325, 60 S.Ct. 540.

Nor do we agree with the Government's position that an individual who submits documents for in camera review has forfeited any availability of immediate appeal.[12] This rule would send the message that a subpoenaed party can only secure immediate appeal by resisting the district court's order for in camera review. Promoting this sort of noncompliance would show great disrespect for a trial judge who is attempting to reach the correct result through thorough examination. Short-circuiting the district court in this manner would be the antithesis of finality and would truly elevate form over substance.

The positions advanced by the Government and Corporate Appellants highlight the tension that the in camera procedure followed by the district court here creates with the *Cobbledick* doctrine. Corporate Appellants assert that this tension is re-

solved in their favor by the holding in *In re Grand Jury Proceedings,* 43 F.3d 966 (5th Cir.1994) ("*Grand Jury*"). In that case, two lawyers were subpoenaed to testify before the grand jury and produce documents. Their client was believed to be dead, although the government disputed that assertion, and other related clients had all expressly waived their claims to attorney-client privilege. On work product grounds, the attorneys moved to quash the subpoena as it related to certain documents and submitted the disputed documents to the district court for in camera inspection. In a hearing on the motion, the district court ruled that the documents were not work product and ordered them produced in redacted form. "The district court then ordered [the attorneys] to redact the documents in accordance with its order and [re]submit all redacted documents to the district court for turnover to the government...." *Id.* at 968. The attorneys complied. Once the district court had regained possession of the documents, the judge stated, "'I am going to turn them [the remaining documents] over to the government unless the Circuit tells me not to.'" *Id.* (alteration in original). The district judge further stated, "Well, I think generally the issue is appealable now.... I want you to preserve your right to appeal. I want you to be able to take up these things...." *Id.* at 969 (alterations in original).

District courts are not in the document delivery business; instead, they are in the business of ruling on document discovery motions. The district court in *Grand Jury* should not have retaken possession of the redacted documents but should have required the attorneys to produce them directly to the government, thereby providing the attorneys an opportunity to refuse production and stand in contempt. The

12. The Government basically argues this position by suggesting that Corporate Appellants' avenue of review was foreclosed by their failure to disobey the order to submit the documents for in camera review and stand in

contempt. There is certainly a "judicial interest in allowing a trial court to inspect documents in camera...." *United States v. Billmyer,* 57 F.3d 31, 34 (1st Cir.1995).

district court's procedural misstep created a "unique dilemma," *id.* at 970, for this court.

When faced with a district court's procedural misstep, an appellate court normally has at least two options. It can accept the flawed procedure and take steps to work around it, or the appellate court can reject the flawed procedure and take steps to correct it. Under the unique facts of *Grand Jury*, judicial efficiency and economy favored application of the former option. Accordingly, in an approach to determining jurisdiction that was "practical rather than ... technical," *Cohen*, 337 U.S. at 546, 69 S.Ct. 1221, we applied a similarly unique blend of the collateral order doctrine and the principles underlying the *Perlman* exception.[13] We chose to accept the flawed procedure and work around it, and ultimately found jurisdiction, in no small part, because the work product immunity issues addressed on appeal were "completely separate from the merits of the underlying grand jury investigation." *Grand Jury*, 43 F.3d at 970.

■■■ In the present appeal, we are faced with a procedural misstep similar to that in *Grand Jury*. In its February 22 order, the district court stated, "In ten days of issuance of this Order, the Court will make said documents available to the Govern-

ment and will return the remaining in camera documents to [Corporate Appellants]." In this case, as in *Grand Jury*, the responsibility to produce documents lies with the parties and not with the court. When a district court conducts in camera review of documents, determines that production is appropriate and so orders, it should, as a matter of course, provide the individual who submitted the documents for in camera review an opportunity to comply with the court's order or stand in contempt.[14] Once the district court has provided the individual with this opportunity, the individual must, in order to secure an immediate appeal, stand in contempt as *Cobbledick* requires. This procedure secures for the individual an avenue of immediate review of the district court's order, maintains the integrity of the *Cobbledick* doctrine in the context of in camera inspection of documents, and supports the principles underlying the finality requirement.

■■■ Here, the district court failed to follow this procedure. Appellants now urge us to, as we did in *Grand Jury*, accept the district court's procedural misstep and work around it by applying the *Perlman* exception and collateral order doctrine to determine jurisdiction.[15] However, employing that approach in this case

---

**13.** As a general matter, the *Perlman* exception either applies or does not apply to a particular factual scenario on its own terms. The same is true of the *Cohen* collateral order doctrine. *See In re Grand Jury Subpoenas*, 123 F.3d 695, 699 (1st Cir.1997) (declining to apply both *Perlman* and the collateral order doctrine to determine the appealability of a denial of a motion to quash a subpoena). Under normal circumstances, the two doctrines should not be used in conjunction with one another. In *Grand Jury*, however, we were not faced with normal circumstances.

**14.** Physically returning the documents to the owner or custodian is not paramount here. What matters is that the district court allow the individual some opportunity, on the record, to accept compliance with the court's order or stand in contempt.

**15.** Quoting *Grand Jury*, Corporate Appellants assert that "where a court has possession of

documents and thereafter issues an immediately enforceable order to turn over the documents to the other party, the order is sufficiently ripe for appellate review." 43 F.3d at 969 (citing *Perlman*, 247 U.S. at 13, 38 S.Ct. 417). This statement holds true in a peculiar case, such as *Perlman* itself, dealing with a "third party intervenor whose documents were in [the] custody of [the] trial court at [the] time [the] order issued," *id.*, or *Grand Jury*, where incorrect procedures had been followed, the death of a client holding a potential interest in the documents was at issue, and the issues on appeal were unquestionably separate from the merits of the underlying investigation. But the statement may not hold true here, and we need not decide whether it does because we are not, as Corporate Appellants suggest, limited to the approach taken in *Grand Jury*.

would plunge us into the very difficult issue of deciding whether, in determining if the acts Corporate Appellants are alleged to have committed even constitute a crime for purposes of applying the crime-fraud exception, we have reached the merits of a secret, ongoing grand jury investigation. We decline Appellants' invitation and, instead, choose the second option of rejecting the flawed procedure and taking steps to correct it by granting mandamus.[16]

It is, therefore, ORDERED that the district court return to Corporate Appellants the documents as to which, in its February 18, 1999, order; it found the Government entitled to discovery. If Corporate Appellants wish to appeal that discovery order, they must stand in contempt as contemplated by *Cobbledick*.

The Government's motion to dismiss No. 99–40262 for lack of jurisdiction is granted.

## IV. CONCLUSION

For the foregoing reasons, we DISMISS Nos. 98–40870, 99–40262, and 99–40271 for want of subject-matter jurisdiction and GRANT mandamus in No. 99–40262 ordering the district court to return certain documents as more fully set forth herein.

---

**16.** This court has the discretion to treat an appeal as a petition for a writ of mandamus under the All Writs Statute, 28 U.S.C. § 1651 (1994). *See Southern Pac. Transp. Co. v. San Antonio,* 748 F.2d 266, 270 (5th Cir.1984) (citing *United States v. Briggs,* 514 F.2d 794, 808 (5th Cir.1975)). However, the writ is generally considered a " 'drastic remedy.' " *In re Burlington Northern, Inc.,* 822 F.2d 518, 522 (5th Cir.1987) (quoting *In re EEOC,* 709 F.2d 392, 394 (5th Cir.1983)). "To ensure that mandamus remains an extraordinary remedy, petitioners must show that they lack adequate alternative means to obtain the relief they seek, and carry 'the burden of show-

ing that [their] right to issuance of the writ is "clear and indisputable." ' " *Mallard v. United States Dist. Court for the S. Dist. of Iowa,* 490 U.S. 296, 309, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989) (alteration in original) (citations omitted) (quoting *Bankers Life & Casualty Co. v. Holland,* 346 U.S. 379, 384, 74 S.Ct. 145, 98 L.Ed. 106 (1953)). It is well-established that the writ is appropriate in certain cases "compelling discovery against a claim of privilege." *Burlington,* 822 F.2d at 522 ("[C]ases have recognized the importance of the asserted privilege and the absence of an adequate alternative method of obtaining review.").