**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**UNITED FRUIT COMPANY, Defendant-**
**Appellee,**

**Standard Fruit and Steamship Company,**
**Appellant.**

**No. 26801.**

United States Court of Appeals
Fifth Circuit.

April 25, 1969.

René H. Himel, Jr., New Orleans, La., for appellant; Robert M. Moore, Overton T. Harrington, Jr., Deutsch, Kerrigan & Stiles, New Orleans, La., of counsel.

James H. McGlothin, Christopher H. Buckley, Jr., Washington, D. C., Louis C. La Cour, U. S. Atty., New Orleans, La., John L. Wilson, George Edelstein, Howard E. Shapiro, Antitrust Division, Dept. of Justice, Hugh B. Cox, Washington, D. C., Sumter D. Marks, Jr., New Orleans, La., Sam G. Daggett, Boston, Mass., Edwin M. Zimmerman, Asst. Atty. Gen., Washington, D. C., for plaintiff-appellee.

Before THORNBERRY and DYER, Circuit Judges, and FISHER, District Judge.

FISHER, District Judge:

This appeal challenges the district court's authority to enter and enforce a protective order prohibiting disclosure of divestiture plans filed in compliance with a consent judgment in an antitrust case. We believe the court did have such authority and did not abuse its discretion in enforcing the order.

In 1954 the United States brought a civil antitrust suit against appellee United Fruit Company alleging violations of sections 1 and 2 of the Sherman Act.[1] The plethoric complaint alleged numerous offenses amounting to unlawful domination of the banana import industry and prayed for injunctive relief. Chief Judge Lynne of the Northern District of Alabama was specially designated in 1956 by Chief Judge Hutcheson of this Court to sit in the Eastern District of Louisiana to hear this case.

After extensive discovery and pretrial proceedings, the district court entered a final consent judgment on February 4, 1958, without taking testimony or other evidence. United was enjoined from a long list of antitrust violations and was ordered *inter alia* to create from its own assets a new competitive banana company having a specified banana importation capacity.[2] In addition, United was required to submit detailed plans for compliance with the decree by July 1, 1967.

Shortly after entry of judgment, the district court granted United's motion for a protective order pursuant to Federal Rule of Civil Procedure 30(b).[3] The order provided that third parties could not, without an express order of the court inspect or copy any document submitted and filed with the Clerk of the court by either party to the litigation.[4] The protective order was designed to insure by keeping secret intimately detailed information which another competitor could use devastatingly that the new company, once established, would function as a viable competitor.

The court approved United's proposed plan for compliance on July 28, 1967. The plan required that within 30 days, United should begin organization of the new company and complete divestiture of specified assets; that within one year after approval of the plan, United should submit a detailed program for the initial organization, staffing, production, shipping, marketing and other arrangements; that within two years United should submit shipping arrangements, liquid assets and other essential accessory assets transferred or offered to the new company with the distribution of defendant's capital stock; and that progress reports be submitted every 60 days

---

1. 15 U.S.C. Secs. 1 and 2.

2. Art. VIII of the Final Judgment required that the new company be "reasonably calculated to be capable of importing" into the United States 9 million stems of bananas per year and provides that the new company shall be "staffed with managerial and other personnel in a manner reasonably calculated to enable the new company to conduct the operations of the banana business available to it by virtue of its properties and assets."

3. 28 U.S.C. Rule 30(b):
"Orders for the Protection of Parties and Deponents * * * for good cause shown, the court in which the action is pending may make an order * * * that secret processes, developments, or research need not be disclosed, or that the parties shall simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court; or the court may make any other order which justice requires to protect the party or witness from annoyance, embarrassment, or oppression."

4. "Therefore, it is ORDERED, ADJUDGED and DECREED by the Court that from and after the date of this order no persons other than a party or counsel for a party, or the court, shall be permitted, for any purpose, to inspect any document produced pursuant to pretrial discovery by either party, or any answer of either party to any interrogatory, or to inspect, copy or photostat any document submitted by either party in this case filed with the Clerk, without express order of this court, issued after due notice to both plaintiff and defendant."

thereafter. United has now organized the new company which is named Sovereign Fruit Company.

On July 2, 1968, appellant Standard Fruit and Steamship Company filed a motion requesting the Court to permit it "to inspect and copy the progress reports and programs submitted * * * pursuant to the plan, as well as other portions of the record." Standard is the second largest banana importer in this country, and Standard's purpose was admittedly one of self interest to obtain advance information about the proposed competitive plans, practices and policies of Sovereign. After oral argument, the Court entered an order denying appellant's motion on the grounds that to reveal the confidential information on file would give Standard a competitive advantage deleterious to the public purposes of the Final Judgment; *viz.*, establishment and survival of a new competitor.

Standard brought this appeal alleging the district court was without authority to enter the protective order, but if it did have such authority, the court abused its discretion in not permitting Standard to inspect the documents on file.

 Initially, we are confronted with whether this Court has jurisdiction. United's brief suggests lack of jurisdiction on two bases. The first involves Section 2 of the *Expediting Act* [5] which provides that cases under the Sherman Act brought by the United States are appealable only to the Supreme Court. The second is United's allegation that there is no final order here from which an appeal can be taken because the Court denied Standard's motion without prejudice to renew it at a later time. The first question was answered by the Supreme Court in Standard Fruit & Steamship Co. v. United Fruit Co., 393 U.S. 406, 89 S.Ct. 684, 21 L.Ed.2d 634, January 21, 1969. Standard had in fact filed appeals to both this court and the Supreme Court. The Supreme Court dismissed the appeal before it citing, Shenandoah Valley Broadcasting, Inc. v. ASCAP, 375 U.S. 39, 84 S.Ct. 8, 11 L.Ed. 2d 8, which indicates an appeal to the Court of Appeals under 28 U.S.C. Sec. 1291 [6] is permissible when the order appealed from disposes of a controversy outside the mainstream of litigation in the government's case. Clearly, Standard's motion to inspect was of an ancillary nature, and this Court therefore has jurisdiction. Cf. also Olympic Refining Co. v. Carter, 332 F.2d 260 (9th Cir. 1964). With respect to whether there is a sufficiently final order from which an appeal can be taken, we think the order here sufficiently final if it denied the relief sought irrespective of the fact that the order denied the motion without prejudice to renew it at a later time.

Appellant's primary argument that the district court lacked authority to enter the protective order is based on the *Publicity in Taking Evidence Act* [7] perti-

---

5. 15 U.S.C. Sec. 29:
 "In every civil action brought in any district court of the United States under any of said Acts, wherein the United States is complainant, an appeal from the final judgment of the district court will lie only to the Supreme Court. Feb. 11, 1903, c. 544, § 2, 32 Stat. 823; Mar. 3, 1911, c. 231, § 291, 36 Stat. 1167; June 9, 1944, c. 239, 58 Stat. 272; June 25, 1948, c. 646, § 17, 62 Stat. 989."

6. 28 U.S.C. Sec. 1291:
 "The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court. June 25, 1948, c. 646, 62 Stat. 929; Oct. 31, 1951, c. 655, § 48, 65 Stat. 726; July 7, 1958, Pub.L. 85-508, § 12(e), 72 Stat. 348."

7. 15 U.S.C. Sec. 30:
 "In the taking of depositions of witnesses for use in any suit in equity brought by the United States under sections 1-7 of this title, and in the hearings before any examiner or special master appointed to take testimony therein, the proceedings shall be open to the public as freely as

nent to antitrust cases which requires generally that depositions and hearings be open to the public as freely as trials in open court. The district court concluded that the statute was limited by its terms to depositions and that if Congress had intended such a broad public policy as contended for by Standard, it would have so stated.

■ We agree that Congress did not intend to preclude entry of protective orders where necessary to effectuate a court's judgment. To the contrary, we find ample authority justifying the court's action. First, we note the well developed concept that the courts possess inherent equitable powers over their own process to prevent abuses.[8] Second, we quote with approval the rule stated in 4 Moore's Federal Practice, 2d Ed., pp. 2519–2520.

> "There is no true privilege against discovery of trade secrets or other 'confidential' business information, but the courts nevertheless will exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors."

This Court has espoused this rule in another case involving competitors wherein Chief Judge Lynne had entered a protective order. cf. A. H. Robins Co. v. Fadely, 299 F.2d 557 (5th Cir. 1962). We stated there:

> "The provisions of Rule 30(b) control: * * * for good cause shown, the court in which the action is pending may make an order * * * that secret processes, developments, or research need not be disclosed, or that

the parties shall * * * file specified documents or information enclosed in sealed envelopes to be opened as directed by the court."

Finally, we observe that the district courts have often exercised their discretionary power in civil antitrust cases by issuing protective orders sealing all or part of the record.[9] We therefore conclude that the district court unquestionably had authority to enter an order prohibiting revelation of the confidential information on file in this case.

■ With respect to whether the district court abused its discretion in not allowing Standard to inspect details concerning Sovereign's organization, a different question might have been presented had Standard sought the information as being relevant for use in another pending proceeding. The Supreme Court in Ex Parte Uppercu [10] has decreed that so long as the object of the motion physically exists, anyone needing it as evidence *at a trial* has a right to call for it, unless some exception is shown to the general rule. We think the district court may have had this in mind when it denied the motion without prejudice. However, the sole argument advanced by Standard in this case was that Standard was placed at an unfair disadvantage if United, the "guilty" company, was permitted to know the intimate details of Sovereign's assets, programs, costs and markets while Standard, the smaller competitor, was not permitted such information. Moreover, Standard argued that if anyone should have the information, it should be the smaller competitors rather than the dominant one.

---

are trials in open court; and no order excluding the public from attendance on any such proceedings shall be valid or enforceable. Mar. 3, 1913, c. 114, 37 Stat. 731."

8. Gumbel v. Pitkin, 124 U.S. 131, 8 S.Ct. 379, 31 L.Ed. 374 (1888); Int. Products Corp. v. Charles A. Koons & Co., 325 F. 2d 403 (2nd Cir. 1963); Baim & Blank, Inc. v. Bruno-New York, Inc., 17 F.R.D. 346 (SDNY 1955); 1 Moore, Federal Practice, par. 0.60(6) (2d ed., 1964).

9. United States v. American Optical Co., 39 F.R.D. 580 (N.C.Cal., 1966); United States v. Lever Bros. Co., 193 F.Supp. 254 (SDNY 1961); United States v. Standard Oil Co., 23 F.R.D. 1 (SDNY 1958); Service Liquor Distrib. Inc. v. Calvert Distiller's Corp., 16 F.R.D. 507 (SDNY 1954).

10. 239 U.S. 435, 36 S.Ct. 140, 60 L.Ed. 368 (1915) cf. Also Olympic Refining Co. v. Carter, supra.

The district court recognized the anomaly of creating a new competitive company completely organized, managed and controlled by the "guilty" dominant company. However, essential to the judgment was the creation of an eventually autonomous competitor. The court concluded that the new company would have a much less chance of survival if all its competitors knew the details of its structure rather than United, alone, whose knowledge was not by choice and whose interest in seeing the new company survive was obvious and direct.

Once having concluded that the district court had authority to enter the protective order, we readily defer to its judgment in deciding whether to enforce it. Because of Judge Lynne's detailed knowledge of the record and complexities and peculiarities of the banana industry gleaned from his more than twelve years of conscientious supervision of this case, he was particularly well qualified to determine whether disclosure would impose disadvantages inimical to the purposes of the Final Judgment. Moreover, we think it obvious that the discretion of the district court was in fact exercised wisely given the likely effects which misuse of the detailed and sensitive information could have.[11] Accordingly, we find no error in the court's enforcement of the order.

Affirmed.

11. Numerous examples of the harm that disclosure of this information could do to Sovereign were given in the affidavit of William Hoelle, President of Sovereign. As stated therein, if competitors were aware of areas in which Sovereign planned to press its sales most vigorously, they could adjust and alter sales plans to frustrate and defeat Sovereign's sales success; if competitors had information as to Sovereign's proposed price aims, they could adjust pricing policies to undercut Sovereign's prices and harm its sales; if competitors had information as to promotional plans contemplated by Sovereign, they could copy the best features of those plans in advance or offset them by running promotions of their own in the same areas; if competitors had information as to the anticipated volume of Sovereign's imports to particular ports or marketing areas, they could adjust imports to those ports and marketing areas so as to defeat Sovereign's selling efforts; if competitors had even approximate knowledge as to Sovereign's costs, they would be able to know the price levels below which Sovereign could not go without risking financial failure; if competitors had knowledge of Sovereign's plans for changes in the volume of production, they could adjust production plans to counteract Sovereign's changes, etc.