United States Court of Appeals
Fifth Circuit

**F I L E D**

**March 16, 2006**

Charles R. Fulbruge III
Clerk

No. 05-20462
-1-

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 05-20462
_____

MARK NEWBY; ET AL.,
Plaintiffs,

v.

ENRON CORPORATION; ET AL,
Defendants;

ARTHUR ANDERSEN LLP,
Defendant - Appellant

v.

TEXAS STATE BOARD OF PUBLIC ACCOUNTANCY,
Intervenor - Appellee.
_____

Appeal from the United States District Court
for the Southern District of Texas
_____

Before KING, BARKSDALE, and PRADO, Circuit Judges.

EDWARD C. PRADO, Circuit Judge:

Appellants Arthur Andersen and John Does I and II
(collectively, "Arthur Andersen") appeal the grant of
intervention given to Appellee Texas Board of Public Accountancy
("Board") in In re Enron for the purpose of accessing discovery
protected by court order.  For the reasons stated below, we hold
that we have jurisdiction to hear this interlocutory appeal and

that the district judge did not abuse her discretion in allowing the Board to intervene.

**I**

Due to the magnitude and complexity of In re Enron, the parties in that case agreed to accept service via a website ("ESL website"). The parties stipulated that access to the website would be limited to judges, parties, and the parties' attorneys in In re Enron. The district court later issued an order requiring the confidentiality of deposition transcripts and exhibits, prohibiting disclosure of protected information to anyone other than "parties, counsel for the parties, employees of the parties or their counsel, witnesses, experts retained by the parties, the Depository Administrator, and the Court-appointed mediator." These instruments are confidential for 30 days after the close of the deposition, and certain types of information are automatically protected even after 30 days have passed. Parties or witnesses also may seek broader protection for information that is proprietary or for which there is good cause.

On February 24, 2005, the Board filed its motion for permissive intervention in In re Enron pursuant to Federal Rule of Civil Procedure 24(b)(2), for the purpose of gaining access to discovery protected by court order in In re Enron. On June 6, 2005, the district court entered an Opinion and Order ("Order") granting the Board's motion to intervene to gain access to the

ESL website and ordered that the Board comply with the court's July 2, 2004 confidentiality order for deposition testimony and exhibits and all subsequent orders granting confidential treatment to specified exhibits and testimony.  Arthur Andersen LLP ("Andersen"), the former auditor of Enron Corporation, filed an appeal on June 12, 2005; and, on June 13, 2005, it filed a motion to stay the Order pending appellate review with the district court.  At the hearing for the motion to stay, the Board agreed not to access the website or use its party status to access the depositions and related exhibits.  The Board extended its agreement through February 7, 2006, after which this Court granted Arthur Andersen's motion to stay pending appeal.

John Does I and II, two former Andersen Certified Public Accountants ("CPAs") who participated in the Enron audits,  moved to intervene in the appeal on July 13, 2005.  Their motion was granted on August 22, 2005.  Andersen and the John Does are the only parties objecting to the Board's intervention in In re Enron.

**II**

The Board is a state regulatory authority charged under the Texas Public Accountancy Act ("Act") with the duty of licensing and disciplining Texas CPAs as well as promulgating accounting rules.  22 TEX. ADMIN. CODE §§ 501.51, 505.2; TEX. OCC. CODE §

901.151.[1]  The Board may initiate disciplinary proceedings against a Texas licensed CPA for violations of rules of professional conduct adopted by the Board as well as for conduct indicating lack of fitness to serve the public as a professional accountant.  TEX. OCC. CODE § 901.502(6), (11) and (12).  Furthermore, the Board is authorized to open investigations if it determines that there is a potential violation of its rules, regulations, or orders.  22 TEX. ADMIN. CODE § 519.21; see also id. § 519.20.

The Act contemplates that the Board will gather and receive information from third parties regarding licensees.  See TEX. OCC. CODE § 901.160.[2]  The Board must keep information it gathers or receives regarding disciplinary actions confidential before a public hearing on the matter.  Id. § 901.160(c).

Texas Occupations Code section 901.166 grants the Board subpoena power.  In pertinent part, the statute states:

[1] The Public Accountancy Act ("Act") states, "[t]he policy of this state and the purpose of this chapter are to provide that . . . a person licensed as a certified public accountant: (A) maintain high standards of professional competence, integrity, and learning; and (B) demonstrate competence and integrity in all dealings with the public . . . ."  TEX. OCC. CODE § 901.005(e)(3).  The Board is authorized to administer the Act. Id. § 901.151(a)(1); 22 TEX. ADMIN. CODE § 505.2.

[2] Texas Occupations Code section 901.160 states in pertinent part, "(a) The board shall make available at the board's offices in Austin any file maintained or information gathered or received by the board from a third party regarding a license applicant or current or former license holder . . . ."

(a) The board may issue a subpoena to compel the attendance of a relevant witness or the production . . . of relevant documents . . . .
. . .
(c) If a person fails to comply with a subpoena, the board, acting through the attorney general, may file suit to enforce the subpoena in a district court in Travis County or in a county in which a hearing conducted by the board may be held.

Id. § 901.166.

Texas Administrative Code section 501.93 dictates that individuals must substantively respond in writing to any communication from the Board requiring a response and provide copies of documents pursuant to the Board's requests.  It states, "Failure to timely respond substantively to written board communications, or failure to furnish requested documentation and/or working papers constitutes conduct indicating lack of fitness to serve the public as a professional accountant."  TEX. ADMIN. CODE § 501.93.

The Board is currently investigating suspected audit failures that may have led to the financial collapse of Enron and its eventual bankruptcy to determine if any violations of the Act or the Board's rules were committed by Texas licensees.

**III**

On August 22, 2005, a motions panel of this Court denied the Board's motion to dismiss this appeal for lack of jurisdiction in a one sentence order; still, the Board urges dismissal of this case.  "In this circuit, an oral argument panel is not bound by a

motions panel's denial of a motion to dismiss."  In re Grand Jury Subpoena, 190 F.3d 375, 378 n.6 (5th Cir. 1999) (citing Ventana Invs. v. 909 Corp., 65 F.3d 422, 425 n.7 (5th Cir. 1995)).  Thus, the motions panel's denial of the Board's motion to dismiss is subject to reconsideration by this panel.  We first determine whether the district court's grant of intervention is appealable before reaching the merits.

The Board argues that the district court's order granting its motion to intervene is not a final judgment and that we are without jurisdiction under 28 U.S.C. section 1291 to consider this appeal.[3]  The Board relies on a Fifth Circuit opinion from 1978:  "It is well settled that '[a]n order allowing intervention is interlocutory and may not be appealed immediately.'"  In re 1975-2 Grand Jury Investigation of Associated Milk Producers, Inc., 566 F.2d 1293, 1301 (5th Cir. 1978) (citing In re Estelle, 516 F.2d 480, 484 (5th Cir. 1976)).  In Associated Milk Producers,  we analyzed the final judgment rule exhaustively.  The final judgment rule is a "dominant rule of federal appellate practice."  Id. at 1297.  We noted that "[f]inality as a condition of review . . . written into the first Judiciary Act and has been departed from only when observance of it would

---

[3] Section 1291 states, in pertinent part, "The court of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . ." 28 U.S.C. § 1291.

practically defeat the right to any review at all." Id.

Arthur Andersen argues that the district court's order granting intervention is appealable under the collateral order doctrine. The collateral order doctrine applies only when there is "an order, otherwise nonappealable, determining substantial rights of the parties which will be irreparably lost if review is delayed until final judgment." See, e.g., United States v. Wood, 295 F.2d 772, 778 (5th Cir. 1961). To fall within the collateral order doctrine, the district court's order granting intervention must fulfill three requirements. First, it must resolve an issue separate from the merits of the underlying action. In re Grand Jury Subpoena, 190 F.3d at 383. Second, it must be conclusive. Id. at 381. Third, the order must be be effectively unreviewable on appeal from a final judgment in the underlying action. Id. The district court's order passes this three-prong test for appealability.

The general rule articulated in Associated Milk Producers, Inc. against appealability of grants of intervention is not applicable to the instant case. See 566 F.2d at 1301. Under Rule 24(b), intervention is typically available when a party seeks to litigate its own "claim or defense" within the context of an ongoing litigation. Thus, ordinarily, a grant of intervention is only one step along the path to reaching a final judgment on the intervenor's claim. See Cohen v. Beneficial Ind.

Loan Corp., 337 U.S.541, 546 (1949)(stating that section 1291 "disallow[s] appeal from any decision which is tentative, informal or incomplete" and permits no appeal of decisions "where they are but steps towards final judgment in which they will merge"). In such cases, the grant of intervention is most appropriately and efficiently appealed along with any final judgment rendered on the intervenor's claims. However, the question of whether or not the Board may intervene is plainly independent from the underlying case. The Board is not seeking to litigate any claim in In re Enron and no final judgment on any claim by the Board will ever be had in the action. Whether the Board should have access to the ESL website and confidential deposition transcripts and exhibits has no bearing on the merits of the underlying securities fraud action.

The proposition, invoked by the Board, that "a discovery order incident to a pending action is not subject to appeal," Honig v. E.I. duPont de Nemours & Co., 404 F.2d 410, 410 (5th Cir. 1968), does not dictate the outcome in the instant case. In Honig and its successors, the discovery at issue involved the principal parties, not an intervening party that has no stake in the merits of the underlying action. We find the instant order granting intervention conclusively determines the disputed question because there is "no 'plain prospect that the trial court may itself alter the challenged ruling(s).'" S. Methodist

Univ. Assoc. of Women Law Students v. Wynne & Jaffe, 599 F.2d 707, 712 (5th Cir. 1979)(citing United States v. Gurney, 558 F.2d 1202, 1207 (5th Cir. 1977)).

The district court order granting intervention is effectively unreviewable on appeal from a final judgment. An appeal from a final judgment in the underlying securities fraud action will not bear on the Board for the reason that the Board is not a principal party to that underlying action. In the meantime, the Board will have had access to the ESL website. Thus, it is appropriate to hear Arthur Andersen's appeal of the order granting intervention at this stage of the litigation. We turn to the merits.

**IV**

The decision to permit intervention under Rule 24(b)(2) requires a threshold determination that the "applicant's claim or defense and the main action have a question of law or fact in common." Howse v. S/V "Canada Goose I", 641 F.2d 317, 322 (5th Cir. 1981) (citing FED. R. CIV. P. 24(b)(2)). "The determination is not discretionary; it is a question of law." Id. (citing Stallworth v. Monsanto Co., 558 F.2d 257, 269 (5th Cir. 1977).

Arthur Andersen argues that, under Deus v. Allstate Insurance Co., 15 F.3d 506 (5th Cir. 1994), the Board did not meet the criteria for intervention set forth in Rule 24(b)(2) requiring it to have a claim or defense with a question of law or

fact in common with the main action. While <u>Deus</u> remains good law, it is distinguishable from the instant case on its facts. Arthur Andersen's argument fails.

In <u>Deus</u>, an insurance agent brought suit against his employer for breach of contract and workers' compensation benefits. <u>Id.</u> at 511-12. First, the plaintiff's original attorneys sought to intervene in order to collect on their retainer contract with plaintiff. <u>Id.</u> at 520-21. The district court did not address the pending intervention in a ruling that set aside the jury verdict against the employer and granted the employer's Rule 50(a) motion for judgment as a matter of law. <u>Id.</u> at 521. The intervenors filed a motion to amend the court's order, but the court denied their motion "because the intervention issue was collateral for the purpose of the finality of the judgment." <u>Id.</u> The Court reasoned that "[a]n order that adjudicates fewer tha[n] all the claims or rights of fewer than all the parties does not terminate the action as to any claims or parties" and that "[a] claim for attorneys' fees generally is not part of the merits to which the fees pertain." <u>Id.</u> Thus, the Court held that its order was merely interlocutory and not appealable until final judgment was entered. <u>Id.</u> at 522.

Meanwhile, the National Neighborhood Office Agents' Club ("NNOAC"), a program of the employer, also sought to intervene so that it could unseal the record. <u>Id.</u> at 525. The district court

record was sealed during most of the discovery process and throughout the trial. Id. The district court denied NNOAC's motion to intervene, claiming it lacked jurisdiction because it mistakenly thought that its order in which it set aside the jury verdict was a final judgment. Id. On appeal, the Court decided that while it usually would remand for the district court to consider the intervention on the merits, as a matter of law it would be an abuse of discretion to grant the intervention to NNOAC. Id. The Court reasoned that NNOAC had no rights or claims that it wanted the district court to adjudicate. Id.

> The only purpose of the attempted intervention was to gain access to documents and testimony that are subject to the protective order. The desire to intervene to pursue the vacating of the protective order and/or the unsealing of the record is not a justiciable controversy or claim, absent some underlying right creating standing for the movants.

Id.

Arthur Andersen maintains that Deus establishes that, as a matter of law, it is an abuse of discretion to allow intervention merely to obtain access to discovery–even if the objective is to use that discovery in a similar or related lawsuit. However, the Court in Deus arrived at its holding, with respect to the latter intervening parties, in light of its having just dismissed the plaintiff's claims.[4] Thus, the Court summarized "[the parties

_____

[4] The Court in Deus illustrated its point with Cunningham v. Rolfe, 131 F.R.D. 587 (D. Kan. 1990). "[I]n Cunningham . . . , the court found that permissive intervention was not appropriate where the applicants were merely trying to gain access to

seeking intervention] have no personal interest affording them standing to intervene." Id. at 526. In the absence of a live controversy in a pending case, an intervenor would need standing to intervene.

In contrast, there is no Article III requirement that intervenors have standing in a pending case. Therefore, Deus is inapplicable. In Ruiz v. Estelle, 161 F.3d 814 (5th Cir. 1998), we held "that Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy and the ultimate relief sought by the intervenors is also being sought by at least one subsisting party with standing to do so." Id. at 830 (emphasis added). This approach is consistent with the outcomes in Diamond v. Charles, 476 U.S. 54 (1986) (holding that intervenor could not pursue an appeal without establishing his standing where the party on whose side he had intervened had decided not to appeal) and Kendrick v. Kendrick, 16 F.2d 744, 745 (5th Cir. 1926) ("An existing suit within the court's jurisdiction is a prerequisite of an intervention.").

Arthur Andersen further argues that the Board, through its statutory grant of authority, has other means of obtaining the

---

discovery materials generated in an earlier products liability suit for use in their own products liability case against the same defendant." Deus, 15 F.3d 506, 525 (5th Cir. 1994) (emphasis added).

information it seeks.  Again, it relies on <u>Deus</u>: "Intervention generally is not appropriate where the applicant can protect its interests and/or recover on its claim through some other means." <u>Deus</u>, 15 F.3d at 526.  Because <u>Deus</u> relies on <u>Diaz v. Southern Drilling Corporation</u>, 427 F.2d 1118 (5th Cir. 1970), for this proposition, its holding is limited to intervention as of right. In <u>Diaz</u>, the appellant argued, <u>inter alia</u>, that the intervention of the United States for the purpose of requesting a deposition was improper.  <u>Id.</u> at 1124.  The Court found that the intervention was proper.  <u>Id.</u> at 1125.  The Court held that because the United States Government would have difficulty getting <u>in personam</u> jurisdiction in the United States over appellant, a Swiss corporation, practicality dictated that the intervention should stand.  <u>Id.</u> at 1124-25.  <u>Diaz</u> was an appeal of a motion to intervene as of right under Rule 24(a)(2).  That rule, unlike Rule 24(b)(2), makes an applicant's ability to protect his interests a criteria for intervention.[5]

---

[5] Rule 24(a)(2) states:

Intervention of Right.  Upon timely application anyone shall be permitted to intervene in an action . . . (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and the applicant is so situated that the disposition of the action may as a practical matter impair or impede the applicant's ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.

FED. R. CIV. P. 24(a)(2).

The Board has questions of fact and law in common with the Enron litigation since it is investigating alleged audit failures that may have led to Enron's collapse to determine whether any Texas-licensed CPAs violated the Public Accountancy Act or the Board's rules. This holding comports with the observation that the "claim or defense" portion of Rule 24(b)(2) has been construed liberally. In re Estelle, 516 F.2d at 485; see also SEC v. United States Realty & Improvement Co., 310 U.S. 434, 459 (1940) ("This provision [Rule 24(b)(2)] plainly dispenses with any requirement that the intervenor shall have a direct personal or pecuniary interest in the subject of the litigation.").

**V**

We now address Arthur Anderson's contention that the district judge improperly granted the Board intervention. We review the district court's grant of intervention for abuse of discretion. Stallworth v. Monsanto Co., 558 F.2d 257, 269-70 (5th Cir. 1977).

In addition to the aforementioned arguments, Arthur Anderson puts forth several policy arguments contending that the district judge abused her discretion. It claims the district court abused its discretion by disregarding the policies of federalism and comity that Arthur Andersen alleges are implicated in the Order granting intervention. Arthur Andersen contends that, prior to its intervention in In re Enron, the Board had already used its

state law investigative powers to conduct exhaustive investigations of Appellant Andersen and numerous individual Texas CPAs relating to the alleged abuses resulting in the In re Enron litigation. Andersen maintains that it has repeatedly allowed the Board to access its document storage facility, resulting in the Board's filing and settling an administrative action against Andersen that resulted in the revocation of its license to practice accounting in Texas. Andersen further maintains that, after the revocation of its license, the Board continued making additional discovery demands on it and acquired electronic documents. In addition, the Board required Appellants John Doe I and II, and other third-party witnesses who have been or will be deposed in In re Enron, to provide written responses to questions; required these individuals to appear before the Board for questioning under oath; and has access to the "massive public record" compiled by other governmental bodies.

Arthur Andersen complains that despite this four-year investigation, the Board has not filed any formal complaint against the Does or any other third-party witness.[6] Arthur Andersen further complains that the Board filed its motion of intervention in this case days after a state court in Travis

---

[6] After the close of briefing in this appeal, the Board in fact issued a complaint in which it alleges violations of the Board's rules and statutes in connection with audits of the financial statements of Enron and related entities.

County refused its motion to enforce subpoenas it served on the Does and others.  Later, as part of a settlement, the Board withdrew its investigatory subpoenas and agreed that it would not reissue those subpoenas or seek testimony from the CPAs unless it later filed an administrative complaint pursuant to Texas state law.[7]  As a result, Arthur Andersen argues that the district court's order granting intervention to the Board effectively expanded the investigative powers of a state agency beyond those granted by state law, and interfered with the ability of Texas state courts to oversee the agency's exercise of such powers.

The Board contends that the Order granting intervention is strictly within the province of the district court and in no way impedes the ability of any state court to effectively enforce state law governing the Board.  We agree.  State law governing the Board's investigatory powers does not comment on what tactics the Board may not take in conducting its investigations.  In granting the Board subpoena powers, Texas Occupations Code section 901.166 states that a person may challenge a subpoena issued by the Board in state court.  It does not create any other substantive limit on the Board's investigatory power.

---

[7] The settlement order resulting from the state court litigation is severely redacted, and it is unclear if the Board agreed to these terms.  In any event, the Board has filed an administrative complaint pursuant to Texas state law.  Thus, it appears that the Board may reissue those subpoenas pursuant to the settlement order.

Further, Arthur Andersen argues that the Order is contrary to important federal policies. It claims that protective orders are often entered by the court pursuant to a stipulation among the parties so that the parties and the court can forego discovery disputes. Arthur Andersen emphasizes that it had settled expectations of confidentiality. However, we have previously addressed modification of protective orders, supporting the district court's exercise of discretion here. In United States v. United Fruit Co., 410 F.2d 553 (5th Cir. 1969), we addressed the district court's denial of a competitor's attempt to access court protected divestiture plans and other documents. We said, "[t]he Supreme Court in Ex Parte Uppercu has decreed that so long as the object of the motion physically exists, anyone needing it as evidence at a trial has a right to call for it, unless some exception is shown to the general rule."[8] Id. at 556 (internal footnote omitted). Further, the Board itself must adhere to the order requiring the confidentiality of deposition transcripts and exhibits.

Finally, the Board argues that this Court owes deference to the district court since the district court is best situated to determine if anyone would be harmed by the Board's access to this information. The Board emphasizes that the district judge has

---

[8] Ex Parte Uppercu, 239 U.S. 435 (1915), involved a motion for access to sealed depositions in a settled case.

overseen this case for several years, knows the common issues of law and fact presented by the main action and the claims of the Board, and found no prejudice or harm.  It also urges deference to the district judge's evaluation of whether the Board's intervention will unduly delay or prejudice the adjudication of the rights of the original parties.  United Fruit supports the proposition that this court should defer to the district court's judgment in deciding whether to enforce the protective order, given the judge's detailed knowledge of the record.  Id. at 557.

Nonparties to a case routinely access documents and records under a protective order or under seal in a civil case through motions for permissive intervention under Rule 24(b)(2).  See, e.g., San Jose Mercury News, Inc., 187 F.3d 1096, 1100 (9th Cir. 1999); EEOC v. National Children's Center, 146 F.3d 1042, 1045 (D.C. Cir. 1998).  The Board's intervention does not "unduly delay or prejudice the adjudication of the rights of the original parties."  FED. R. CIV. P. 24(b).  Further, permissive intervention is within a court's discretion.  See EEOC, 146 F.3d at 1046).  Texas granted the Board broad powers of investigation to oversee the public interest in maintaining high standards of competence and integrity in the practice of public accountancy. Since state law does not explicitly limit the Board's investigatory powers through the mechanism of its intervening in this case, federalism and comity concerns are not implicated.

The state statutes governing the Board do not indicate any intention by the state that the Board's investigatory powers are to be scrutinized and strictly regulated by the state.[9]  The district judge did not abuse her discretion.

 For the foregoing reasons we AFFIRM the district court's Order.

---

 [9] Moreover, the Texas Court of Appeals has found the statute to be constitutional, "not amount[ing] to an unwarranted regulation of private business."  Texas State Bd. of Pub. Accountancy v. Fulcher, 515 S.W.2d 950, 956 (Tex. Civ. App. 1974).