# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 31, 2023

Lyle W. Cayce
Clerk

_____

No. 22-40707

_____

UNITED STATES OF AMERICA, *ex rel* CALEB HERNANDEZ and JASON WHALEY, *Relator*s, *Et al.*,

*Plaintiff*,

*versus*

TEAM FINANCE, L.L.C.; TEAM HEALTH, INCORPORATED; TEAM HEALTH HOLDINGS, INCORPORATED; AMERITEAM SERVICES, L.L.C.; HCFS HEALTH CARE FINANCIAL SERVICES, L.L.C.; QUANTUM PLUS, L.L.C., *doing business as* TEAMHEALTH WEST,

*Defendants—Appellees*,

*versus*

LOREN ADLER,

*Movant—Appellant*.

_____

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 2:16-CV-432

_____

Before WIENER, GRAVES, and DOUGLAS, *Circuit Judges*.

JACQUES L. WIENER, JR., *Circuit Judge*:

No. 22-40707

Movant-Appellant Loren Adler seeks to permissively intervene in this closed matter to challenge the sealing of records. The district court denied Adler's intervention on three independent grounds, each of which is a subject of this appeal. Although courts are afforded great discretion in deciding intervention pursuant to Federal Rule of Civil Procedure 24(b), the district court's reasoning was premised on several significant errors. We reverse and remand.

I.

The underlying case against Defendants-Appellees TeamHealth—a group of private equity-owned healthcare entities—was brought under the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3729 *et seq.* Two former TeamHealth employees, Caleb Hernandez and Jason Whaley (together, the "Relators"), alleged that TeamHealth routinely billed for non-existent doctor examinations and critical care services. The matter was unsealed in 2018 after federal and state governments declined to intervene. The Relators moved forward with their case, which survived dismissal and proceeded through extensive discovery.

The parties jointly agreed to a protective order but disputed its contours. For example, TeamHealth fought to use a special designation of "Highly Confidential – Attorneys' Eyes Only" to protect "highly competitive information." Relators contended that this designation was unnecessary because the case "d[id] not involve an intellectual property or trade secret[s]." The district court ruled that TeamHealth could implement its requested designation as necessary.

Throughout 2020, Relators proceeded to challenge the confidentiality designations of specific swathes of documents. TeamHealth responded by seeking additional protective orders. The district court held a hearing and granted TeamHealth's requests for protection with the caveat that the

documents could be reconsidered later in the context of trial. As the case proceeded, the district court entered orders sealing relevant documents.

Shortly before trial in July 2021, the parties settled this case. The settlement required TeamHealth to pay a total of $48 million to the United States and Relators. The district court entered the parties' stipulation for dismissal, but "retain[ed] jurisdiction for the purpose of enforcing the settlement agreement between the parties."

On December 14, 2021, Adler moved to intervene permissively pursuant to Federal Rule of Civil Procedure 24(b)(1) for the limited purpose of unsealing records. As "a health care economist who focuses his work on health care pricing," Adler had previously "studied and published extensively on TeamHealth" and other private equity-owned companies. Adler's statements online make clear that he followed litigation related to TeamHealth. He submitted that "the information in this case would be highly informative to his research" and "would be instructive as to how providers bill for services generally," which he contends is of interest to the general public.

The district court denied Adler's motion to intervene on three independent grounds: (1) lack of standing, (2) a failure to demonstrate "a claim or defense that shares with the main action a common question of law or fact," and (3) untimeliness. Adler now appeals that decision.

## II.

Adler moved to intervene in this matter pursuant to Rule 24(b)(1), which states, "[o]n timely motion, the court may permit anyone to intervene who . . . has a claim or defense that shares with the main action a common question of law or fact." FED. R. CIV. P. 24(b)(1) ("PERMISSIVE INTERVENTION . . . *In General*.").

No. 22-40707

Adler raises three issues on appeal related to each of the district court's reasons for denying his motion: (1) standing, which is required to intervene in a closed case; (2) adherence to Rule 24(b)(1), which requires that Adler have a "claim or defense that shares with the main action a common question of law or fact"; and (3) timeliness, which considers delay in filing for intervention and any related prejudice to the litigants.[1] These issues were sufficiently raised and argued below in Adler's motion to intervene. While the district court is afforded great discretion in deciding permissive intervention, its reasons for denial were premised on erroneous statements of law which warrant reversal. *See United States v. Chambliss*, 948 F.3d 691, 693 (5th Cir. 2020) (A district court abuses its discretion when it "bases its decision on an error of law or a clearly erroneous assessment of the evidence." (quoting *United States v. Chapple*, 847 F.3d 227, 229 (5th Cir. 2017))).

A.

We first examine standing. Clear precedent dictates that, "[i]n the absence of a live controversy in a pending case, an intervenor would need standing to intervene." *Newby v. Enron Corp.*, 443 F.3d 416, 422 (5th Cir. 2006) (discussing that principle as set forth in *Deus v. Allstate Insurance Co.*, 15 F.3d 506, 526 (5th Cir. 1994)); *accord Bond v. Utreras*, 585 F.3d 1061, 1072 (7th Cir. 2009) ("[T]he Fifth Circuit has concluded that a third party seeking to intervene to challenge a protective order after the main controversy has been disposed of must demonstrate standing."). Adler contends that the

---

[1] TeamHealth also contends that Adler failed to file a pleading in accordance with Rule 24(c). We observe no such deficiency in Adler's motion to intervene, proposed motion to unseal, and supporting declaration. *See In re Beef Indus. Antitrust Litig.*, 589 F.2d 786, 789 (5th Cir. 1979); *see also Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992) (Movants must "describe[] the basis for intervention with sufficient specificity to allow the district court to rule.").

court's inherent "supervisory power over its own records and files" means that no standing is required to intervene for the limited purpose of unsealing records. *SEC v. Van Waeyenberghe*, 990 F.2d 845, 848 (5th Cir. 1993) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)). However, *Deus* contradicts Adler's position and remains good law. *See Allen-Pieroni v. White*, 694 F. App'x 339, 340 (5th Cir. 2017) (recently applying *Deus*). *Deus*'s reasoning—although related to intervention as of right—naturally flows to all attempts to intervene in a closed case for the purpose of unsealing records. *See Newby*, 443 F.3d at 422 ("Article III does not require intervenors to independently possess standing where the intervention is into a subsisting and continuing Article III case or controversy."). We thus affirm the district court's reasoning that Adler must satisfy standing to intervene in this matter.

That said, we disagree with the notion that *Deus* completely forecloses standing to intervene when a movant seeks only to unseal records. Standing here is assessed through the ordinary lens of Article III: a "plaintiff must have suffered an injury in fact" that is "fairly traceable to the challenged action" and that likely "will be redressed by a favorable decision." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). As a matter of subject matter jurisdiction, we review for standing *de novo*. *Moss v. Princip*, 913 F.3d 508, 513 (5th Cir. 2019).

The court in *Deus* concluded that its movants lacked standing because "[t]he desire to intervene to pursue the vacating of the protective order and/or the unsealing of the record is not a justiciable controversy or claim, . . . ." 15 F.3d at 525. The district court here relied on this language to conclude that Adler had no standing, but that sentence continues with an important caveat: ". . . *absent some underlying right creating standing for the movants*." *Id.* (emphasis added). We conclude that Adler presents one such "underlying right"—he seeks to vindicate the public's right to access court documents.

In *Deus*, the movants sought to intervene solely for their own private benefit in separate litigation. 15 F.3d at 526 ("[H]e can protect any interest he has in these materials by filing a discovery request in that case."). *Allen-Pieroni*, which our district court also relied on, similarly concerns a movant seeking documents for separate litigation. 694 F. App'x at 340 ("Although White argues . . . that allowing access to the discovery would reduce the burden on the respective parties in her case, she has not demonstrated that she has standing in *this* case."). Adler, on the other hand, seeks to represent an important public interest not implicated in *Deus* or *Allen-Pieroni*. He makes clear in his declaration that "the information [he seeks to unseal] is also highly likely to be of public interest because the cost of medical care in the United States is of high public interest."

Alleged violations of the public right to access judicial records and proceedings and to gather news are cognizable injuries-in-fact sufficient to establish standing. *See United States v. Aldawsari*, 683 F.3d 660, 665 (5th Cir. 2012) (finding standing when a "gag order affected [a journalist's] right to gather news"); *Davis v. E. Baton Rouge Par. Sch. Bd.*, 78 F.3d 920, 926 (5th Cir. 1996) ("Several courts have held that news agencies have standing to challenge confidentiality orders in an effort to obtain information or access to judicial proceedings, although they are neither parties to the litigation nor restrained directly by the orders."). Adler also alleges an individualized harm from "being deprived of information that he is uniquely well-qualified to study and publicize in his academic work, and which information he can get nowhere else." Such injuries are fairly traceable to this action and can be remedied through the unsealing of appropriate records. *See id.* Reviewed *de novo*, Adler has satisfied standing to bring his motion to intervene in this otherwise closed matter.

B.

We next examine the district court's reasoning that Adler has failed to satisfy the requirements of Rule 24(b)(1). Although permissive intervention is "committed to the discretion of the court," the district court abused its discretion in concluding that Adler has not brought a "claim or defense" in his motion to intervene. *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1011-12 (2022) ("[A] court fails to exercise its discretion soundly when it base[s] its ruling on an erroneous view of the law." (internal quotation marks omitted)). The district court relied again on *Deus*:

> "The desire to intervene to pursue the vacating of the protective order and/or the unsealing of the record is not a justiciable controversy or claim . . . ." *Deus*, 15 F.3d at 525. Thus, Adler's request to unseal documents is not a "claim" under Rule 24(b)(1)(B). Adler has alleged no other "claim or defense" that provides a basis for permissive intervention under Rule 24(b). Whether or not Adler's alleged "interest" shares a nexus with the main action a common question of law or fact is beside the point.

*United States ex rel. Caleb Hernandez & Jason Whaley v. Team Fin., L.L.C.*, No. 2:16-CV-00432-JRG, 2022 WL 16550318, at *5 (E.D. Tex. Sept. 28, 2022).

*Deus*'s strong statement regarding "justiciable controversy or claim" was made in the limited context of standing. *See Newby*, 443 F.3d at 421-23. Reading this passage more expansively would categorically bar all nonparty record-related challenges in federal court made with public access in mind. This outcome is untenable when intervention is "the procedurally correct course" for the public to challenge such restrictions. *In re Beef Indus. Antitrust Litig.*, 589 F.2d at 789. It would also fly in the face of precedent.

Our circuit has accepted that "[t]he 'claim or defense' portion of Rule 24(b) . . . [is to be] construed liberally." *Newby*, 443 F.3d at 422 (citing *In re*

*Estelle*, 516 F.2d 480, 485 (5th Cir. 1975)). Adler's challenge falls squarely within the legal definition of "claim"—an "interest or remedy recognized at law." *Claim*, *Black's Law Dictionary* (11th ed. 2019).  We have long recognized the public's "common law right to inspect and copy judicial records." *See Bradley ex rel. AJW v. Ackal*, 954 F.3d 216, 224 (5th Cir. 2020) (quoting *United States v. Sealed Search Warrants*, 868 F.3d 385, 395 (5th Cir. 2017)) (observing that this right "promotes the trustworthiness of the judicial process, curbs judicial abuses, and provides the public with a better understanding of the judicial process, including its fairness").

We have accordingly permitted intervention by nonparties who seek only to challenge record-related restrictions. *See In re Beef Indus. Antitrust Litig.*, 589 F.2d at 789 (permitting nonparty intervenors to challenge a protective order). So have all other circuits. *See EEOC v. Nat'l Children's Ctr.*, 146 F.3d 1042, 1045 (D.C. Cir. 1998) (observing that "every circuit court that has considered the question has come to the conclusion that nonparties may permissively intervene for the purpose of challenging confidentiality orders" and compiling cases).

We also conclude that Adler's claim shares a common question of law with the district court's decisions related to sealing records: Whether there are compelling reasons for sealing that outweigh the public's right of access. We reverse the district court's determination that Adler has failed to satisfy the requirements of Rule 24(b)(1). That said, we remain in the realm of *permissive* intervention. The next issue allows us to explore the discretion afforded to the district court on remand.

## C.

Rule 24(b)(1) makes clear reference to timeliness, which this circuit assesses through the factors set forth in *Stallworth v. Monsanto Co.*: (1) the length of time the movant waited to file, (2) the prejudice to the existing

parties from any delay, (3) the prejudice to the movant if the intervention is denied, and (4) any unusual circumstances. 558 F.2d 257 (5th Cir. 1977); *see also St. Bernard Par. v. Lafarge N. Am., Inc.*, 914 F.3d 969, 976 (5th Cir. 2019) (applying *Stallworth* in the context of permissive intervention). "[W]hether . . . intervention is timely is largely committed to the discretion of the district court, and its determination will not be overturned on appeal unless an abuse of discretion is shown." *Stallworth*, 558 F.2d at 263.

Unfortunately, the district court strikes out with its last independent reason for denying Adler's intervention. That court abused its discretion when assessing *Stallworth*'s first factor. *See Cameron*, 142 S. Ct. at 1012. It is well established that the length of time to file is measured from the moment that the prospective intervenor knew that his interests would "no longer be protected." *Stallworth*, 558 F.2d at 264. Yet, the district court instead considered Adler's delay from the time of the case's unsealing and Adler's general awareness of the case based on his activity online, placing Adler's delay at "approximately 1.5 to 2.5 years." *Stallworth* expressly rejected such measurement. *Id.* at 264. Indeed, the need for intervention is not immediately apparent at the onset of litigation, and encouraging premature action is not in the parties', or the court's, interest. *See id.* at 264-65 ("[A] rule making knowledge of the pendency of the litigation the critical event . . . would encourage individuals to seek intervention at a time . . . when the probability that they will misjudge the need for intervention is correspondingly high.").

A nonparty movant's awareness of a case's existence says little about whether their interests are protected. A court must also look to the actions of the litigants. For example, it would be error to measure the length of delay solely from the parties' motions regarding sealing—a court would need to observe that the parties were complacent or non-adversarial as to not protect the interests of potential intervenors. In this case, Adler's interests were

protected by the Relators' litigation of the protective orders and confidentiality designations.

The district court gave great weight to the fact that Adler had an "unexplained delay of anywhere from 1.5 to 2.5 years (after when he should have known of his interest in the case until attempting to intervene)." That length of delay is in stark difference from the months implicated by the settlement of the case or the time it took for Adler to realize that the documents would not be unsealed after the case's close. Although this error relates to only one *Stallworth* factor, it was a significant one.

We reverse the district court's decision on Adler's motion to intervene and remand it for reconsideration of timeliness and other unexplored reasons for denial, if any. Although we firmly hold that Adler has satisfied standing and the requirements of Rule 24(b)(1), we reiterate the district court's discretion in ultimately deciding Adler's motion. The district court is better situated to assess the exact length of Adler's delay, any explanations for such delay, and prejudice to the parties—along with ancillary considerations such as the contents of the sealed documents, prior consideration by the court and litigants, and the tentative nature of the court's evidentiary rulings in light of an upcoming, but ultimately averted, trial. These considerations do not serve as an exhaustive list, but as aspects of the matter we observe relevant. The decision to grant or deny Adler's intervention is firmly in the district court's hands. *See Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 317 (5th Cir. 2021).

### III.

The district court's denial of Adler's motion to intervene is REVERSED and REMANDED in accordance with the foregoing.